**Ronald MASK, Petitioner,**

v.

**Michael McGINNIS, Superintendent, Southport Correctional Facility, and Dennis Vacco, New York State Attorney General, Respondents.**

**No. 97 CIV. 6019(DC).**

United States District Court,
S.D. New York.

Nov. 4, 1998.

Frank J. Loss, the Legal Aid Society, Criminal Appeals Bureau, New York City, for Petitioner.

Dennis C. Vacco, Attorney General of the State of New York, by Mirna E. Martinez, Assistant Attorney General, New York, for Respondents.

### MEMORANDUM DECISION

CHIN, District Judge.

Petitioner Ronald Mask petitions this Court for a writ of *habeas corpus* pursuant to 28 U.S.C. § 2254, challenging his February 20, 1992 convictions for two counts of Robbery in the First Degree and one count of Robbery in the Third Degree on the ground that he was denied effective assistance of counsel in violation of the Sixth and Fourteenth Amendments. For the reasons that follow, the petition will be granted, unless respondents agree to (i) reduce petitioner's sentence to a term of eight to sixteen years or (ii) grant him a new trial.

## BACKGROUND

### A. The Facts

The evidence presented at petitioner's 1992 trial revealed that on August 29, 1990, petitioner confronted Adeline Lindley ("Lindley") in the elevator of her office building at 133 Fifth Avenue. Brandishing a knife, petitioner ordered Lindley to give him her jewelry and money. Lindley gave him ten dollars and a gold necklace, and petitioner fled.

On September 7, 1990 and September 21, 1990, petitioner committed similar robberies at 40 West 27th Street and 15 West 28th Street, respectively. During the September 7, 1990 robbery, petitioner accosted complainant Taddy Wan Chien Lin ("Lin") as he was waiting for an elevator and demanded money. Although Lin did not see a knife, he noticed that petitioner kept one hand in his pocket as if to conceal a weapon. Lin gave petitioner ten dollars and, when the elevator arrived, screamed that he was being robbed. Petitioner fled. On September 21, 1990, petitioner followed Jen Tsai ("Tsai") into an elevator, waved a silver knife, and demanded money. Petitioner stole between $100 and $200 from Tsai and fled.

Petitioner was arrested on September 22, 1990.[1] On the day of his arrest, Lin identified petitioner in a line-up. The next day, Lindley and Tsai independently identified petitioner in two subsequent line-ups.

### B. Prior Proceedings

During pre-trial plea negotiations, the prosecution offered to let petitioner plead guilty to one count of Robbery in the First Degree, in full satisfaction of the indictment, conditioned upon an indeterminate sentence of 10 years to life. (Coppotelli Aff. ¶ 3b). Petitioner refused this offer.

On September 5, 1991, the Supreme Court, New York County (Richard T. Andrias, J.), held a pretrial Mapp/Wade hearing. The court inquired as to the results of the plea bargaining process, asking "the last offer was ten to life?" (H. Tr. at 9).[2] The prosecutor replied, "That's the minimum time the defendant could do on one count of Robbery in the First Degree inasmuch as he's a mandatory violent persistent [felony offender]." (Id.). In fact, however, petitioner was not a violent persistent felony offender within the meaning of N.Y. Penal L. § 70.08, which requires that the defendant have at least two prior convictions and that sentence have been imposed for the prior convictions before commission of the present felony. ' Petitioner had previously been convicted of two felonies, but he had not yet been sentenced for the second of those felonies.[3]

When the hearing continued on September 13, 1991, the court admonished petitioner to appreciate the risks involved in maintaining his innocence in the face of strong evidence against him and noted that after the Mapp/Wade hearing petitioner would be "rolling the dice." (Id. at 4). The court added, "I want to make sure two months from now if there is a sentencing procedure you don't say gee I should have done something else. The People were being reasonable." (Id. at 7). Petitioner, however, again refused to accept the plea offer.

Petitioner was tried before a jury between November 22 and December 3, 1991. At trial, the prosecution again characterized petitioner as a mandatory violent persistent felon. (Tr. at 7). The prosecution repeated to the petitioner that "the offer to the defendant at this time before the jury steps into the courtroom is ten to life. It's the lowest that I can go and the least amount of time that the defendant can get." (Id. at 8). At the end of the trial, petitioner was found guilty of two counts of first degree robbery (N.Y. Penal L. § 160.15[3] ) and one count of third degree robbery (N.Y. Penal L. § 160.05). On February 10, 1992, petitioner was sentenced, as a second violent felony

---

1. Petitioner was arrested after committing a fourth robbery on September 22, 1990, but was not charged with this robbery because the victim could not positively identify him.

2. References to (H. Tr. at _) are to the Mapp/Wade hearing conducted on September 5, 1991.

3. Petitioner's two prior felonies, both for robbery in the second degree, occurred on January 29, 1987 and June 16, 1987, respectively. (Tr. at 33). References to (Tr. at _) are to the trial conducted between November 22, 1991 and December 3, 1991.

offender, to two consecutive prison terms of 9 to 18 years for the first degree robbery counts, and to a third consecutive term of 2 to 4 years for the third degree robbery count. The resultant aggregate prison term was 20–40 years.

Petitioner appealed his conviction to the Appellate Division, First Department. The Appellate Division affirmed on January 9, 1996. *See People v. Mack*,[4] 223 A.D.2d 383, 637 N.Y.S.2d 2 (1st Dep't 1996). Petitioner's application for leave to appeal to the New York State Court of Appeals was denied on August 20, 1996. *See People v. Mack*, 649 N.Y.S.2d 396, 672 N.E.2d 622 (N.Y.App. 1996). On January 2, 1994 petitioner also moved in the Supreme Court, New York County, for an order *coram nobis* vacating the judgment against him, but the motion was denied in accordance with N.Y.Crim. Proc. L. § 440.10(2)(b).

## DISCUSSION

In support of his request for *habeas* relief, petitioner asserts that he was denied effective assistance of counsel when defense counsel failed to recognize that petitioner was a second violent felony offender rather than a persistent violent felony offender.

In general, to obtain relief under 28 U.S.C. § 2254 a petitioner must prove that he or she is in state custody in violation of the Constitution or laws of the United States. *See* 28 U.S.C. § 2254(a). A criminal defendant has been deprived of effective assistance of counsel if (a) counsel's performance falls below an objective standard of reasonableness and (b) there is a reasonable probability that, but for counsel's unprofessional performance, the outcome of the proceedings would have been different. *Strickland v. Washington*, 466 U.S. 668, 688, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *United States v. Gordon*, 156 F.3d 376 (2d Cir.1998). I discuss each prong of the test, as applied to this case, in turn.

### A. *Defense Counsel's Performance*

■ The Sixth Amendment guarantees not only the assistance of counsel, but reasonably effective assistance of counsel. *United States v. Day*, 969 F.2d 39, 41 (3d Cir.1992) (citing *Strickland*, 466 U.S. at 683, 104 S.Ct. 2052); *see McMann v. Richardson*, 397 U.S. 759, 771 n. 14, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970). To establish that counsel provided deficient performance, a petitioner must prove not only the existence of errors by counsel but the existence of errors so serious that counsel failed to function as the "counsel" guaranteed by the Sixth Amendment. *Strickland*, 466 U.S. at 687, 104 S.Ct. 2052. Thus, when evaluating counsel's efficacy, the standard is that of "reasonably effective assistance." *Id.; see also McMann*, 397 U.S. at 771 n. 14, 90 S.Ct. 1441. In making this inquiry, courts are instructed to be highly deferential and to presume that "counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689, 104 S.Ct. 2052.

■ While there is no constitutional right to plea bargain, *Weatherford v. Bursey*, 429 U.S. 545, 559, 97 S.Ct. 837, 51 L.Ed.2d 30 (1977), the failure of counsel to communicate a plea offer to a client has been held to constitute a denial of Sixth and Fourteenth Amendment rights. *See United States ex rel. Caruso v. Zelinsky*, 689 F.2d 435, 438 (3d Cir.1982); *Johnson v. Duckworth*, 793 F.2d 898, 902 (7th Cir.), *cert. denied*, 479 U.S. 937, 107 S.Ct. 416, 93 L.Ed.2d 367 (1986); *United States v. Blaylock*, 20 F.3d 1458, 1465–66 (9th Cir.1994). In addition, when defendants are represented by counsel in the plea bargaining process they maintain the right to make a reasonably informed decision whether to accept a plea offer. *Hill v. Lockhart*, 474 U.S. 52, 56, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985). In *Gordon*, the Second Circuit recently held that an attorney breached his duty as a criminal defense lawyer " 'to advise his client fully on whether a particular plea to a charge appears desirable' " when the attorney "grossly underestimat[ed] his client's] sentencing exposure." *United States v. Gordon*, 156 F.3d 376, 380 (2d Cir.

---

4. Petitioner operated under a variety of aliases, thus prior court proceedings refer to him as "Ronald Mack, a/k/a Ronald Mask, a/k/a Ronnie Mack, a/k/a Kevin McDaniels, a/k/a Kevin McDaniel."

1998) (quoting *Boria v. Keane,* 99 F.3d 492, 496 (2d Cir.1996)).

In the present case, defense counsel's representation fell below the prevailing norm by virtue of his failure to recognize defendant's status as a second violent felony offender rather than a persistent violent felony offender. A persistent violent felony offender is clearly defined in N.Y. Penal L. §§ 70.08 and 70.04 as a person who stands convicted of a violent felony offense and who has previously been convicted of, and sentenced for, two or more predicate violent felonies. Because petitioner had not yet been sentenced on one of the two prior felony convictions, he could not have been classified as a persistent violent felony offender. *See People v. Morse,* 62 N.Y.2d 205, 476 N.Y.S.2d 505, 511, 465 N.E.2d 12 (N.Y.App.1984).

As a consequence of defense counsel's failure to detect the prosecutor's error, the prosecution, the defense, and the trial court all operated under the mistaken impression that petitioner had to be sentenced as a violent persistent felony offender. Petitioner was not properly advised and he was not properly represented in the plea negotiations. His counsel did not provide reasonably effective assistance in this important respect, and thus petitioner satisfies the first prong of the *Strickland* test. *Accord United States v. Gordon,* 156 F.3d 376 (2d Cir.1998).

## B. *Prejudice*

Petitioner also satisfies the second prong of the *Strickland* test. To establish prejudice, a petitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. "It is not enough for the [petitioner] to show that the errors had some conceivable effect on the outcome of the proceeding." *Strickland v. Washington,* 466 U.S. 668, 693, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Rather, a reasonable probability is a probability "sufficient to undermine confidence in the outcome." *Id.* at 694, 104 S.Ct. 2052. Here, petitioner must demonstrate a reasonable probability

that, if defense counsel had realized his mistake, not only would the district attorney have offered a more lenient plea offer, but petitioner would have accepted it as well. *See United States v. Thompson,* 27 F.3d 671, 675–76 (D.C.Cir.), *cert. denied,* 513 U.S. 1050, 115 S.Ct. 650, 130 L.Ed.2d 554 (1994); *Boria v. Keane,* 99 F.3d 492, 497 (2d Cir.1996); *United States v. Day,* 969 F.2d 39, 45–46 (3d Cir.1992).

In *Gordon,* the Second Circuit rejected the government's three arguments that there was no reasonable probability that the outcome would have been different in that case. *Gordon,* 156 F.3d at 380. First, the Court upheld the district court's finding that the petitioner relied on his counsel's erroneous advice even though the district court and the government both informed petitioner that he faced a minimum sentence higher than the plea offer. *Id.* Second, whether the government made a formal plea offer was irrelevant because the petitioner was prejudiced by not having accurate information upon which to decide whether to pursue further plea negotiations. *Id.* Third, petitioner's statement that the outcome would have differed, in conjunction with the objective evidence of the significant disparity between the actual maximum sentencing exposure and the exposure represented by defendant's counsel, was sufficient to establish a reasonable probability that the outcome of the proceeding would have differed. *Id.* at 380–81.

Here, I am persuaded that a reasonable probability exists that but for defense counsel's error in the present case, the result of the proceedings would have been different. First, in his affidavit of August 25, 1994,[5] petitioner states that, assuming he had been properly classified as a second violent felony offender rather than as a persistent violent felony offender, a reasonable offer would have been eight to sixteen years. (Mask Aff. ¶ 1). Petitioner further states that he would have pled guilty had the prosecution offered a guilty plea with a sentence of less than ten years to life, and that he rejected the plea

5. Petitioner's Affidavit was given pursuant to his previous Motion to Vacate Judgment of Convic-

tion, which was denied on February 7, 1995.

offered by the prosecution because it was not reasonable. (Mask Aff. ¶ 3).

Second, the record demonstrates that there is a reasonable probability that the prosecutor would have been willing to offer a more favorable plea but for her mistaken belief that defendant was a persistent violent felony offender. (Tr. at 8, 11, 14). The prosecutor stated that the offer of "ten to life" was the "lowest" she could go and "the least amount of time that the defendant can get." (Tr. at 8). These comments reasonably suggest that the prosecutor would have been willing to offer a lesser sentence if the law permitted. In fact, the sentencing guidelines in effect in 1991 when petitioner was tried indicate that the minimum sentence that the prosecution could have offered was significantly lower—six to twelve years. (*See* N.Y. Pen. Law § 70.04 (1990)). A significant disparity therefore existed between the actual minimum sentencing exposure (six to twelve years) and what petitioner was told and everyone apparently believed (ten years to life).

Hence, a reasonable possibility exists that if defense counsel had pointed out that petitioner was not a persistent violent felony offender, additional negotiations would have been pursued and the prosecutor probably would have been willing to offer a sentence lower than ten to life, including a sentence in the range that petitioner would have found reasonable—eight to sixteen years. Under these circumstances, my confidence in the outcome of the proceedings is certainly undermined.

Accordingly, I conclude that petitioner also satisfies the second prong of the *Strickland* test.[6]

### CONCLUSION

For the reasons set forth above, petitioner's application for a writ of *habeas corpus* will be granted, unless respondents agree to (i) reduce petitioner's sentence to a term of eight to sixteen years or (ii) grant him a new trial. Petitioner's counsel shall submit a propose judgment on notice.

---

6. At an earlier point in these proceedings, I thought it would be helpful to hold an evidentiary hearing. Upon further reflection, however, I conclude that no evidentiary hearing is necessary. First, respondents have not expressed any desire to cross-examine petitioner. Second, the Assistant District Attorney's comments made on the record seven years ago are undoubtedly more probative than any testimony she could give now. Third, in the meantime, the Second Circuit issued its decision in *Gordon*, and that decision provides petitioner with strong support for his claim of ineffective assistance.