**Ronald MASK, Petitioner–Appellee,**

v.

**Michael McGINNIS, Superintendent, Southport Correctional Facility; Dennis C. Vacco, New York State Attorney General, Respondents–Appellants.**

**No. 99–2071.**

United States Court of Appeals, Second Circuit.

Argued: March 7, 2000

Decided: Nov. 15, 2000

Susan Axelrod, Assistant District Attorney for New York County, New York, N.Y. (Robert M. Morgenthau, District Attorney for New York County; Morrie I. Kleinbart, on the brief) for Appellant Michael McGinnis.

Frank J. Loss, The Legal Aid Society, New York, NY, for Appellee.

Before: OAKES, CALABRESI, and PARKER, Circuit Judges.

PARKER, Circuit Judge:

Respondents–Appellants Michael McGinnis, Superintendent of the Southport Correctional Facility, and Eliot Spitzer, New York State Attorney General, appeal the December 2, 1998, judgment of the United States District Court for the Southern District of New York (Denny Chin, Judge), which conditionally granted Petitioner–Appellee Ronald Mask's petition for habeas corpus unless: (1) Mask's sentence is reduced to a term of eight to sixteen years; or (2) Mask is granted a new trial. The district court concluded that Mask received ineffective assistance of counsel in the course of attempting to secure a plea agreement. Specifically, the court found that Mask's counsel failed to correct the prosecutor's mistaken belief that Mask was a violent persistent felon under New York State Penal Law § 70.08. As a result of the prosecutor's mistaken belief, the prosecutor stated that she was not able to offer a plea lower than ten years to life, which Mask rejected. Mask was then convicted at trial and sentenced to twenty to forty years in prison. On appeal, Respondents argue that the district court improperly disregarded factual determinations made by the state courts that denied Mask's request for relief under New York Criminal Procedure Law § 440.10. We disagree with the State for the reasons set forth below, and we therefore affirm the judgment of the district court.

## I. BACKGROUND

Petitioner Ronald Mask was responsible for a string of armed robberies in midtown Manhattan elevators during the early 1990s. On September 24, 1990, police arrested Mask shortly after he had committed one such robbery. At the time of his arrest, Mask had a large silver knife in his possession. Mask was subsequently charged with three counts of first degree robbery (representing three separate robberies) in New York County Indictment 11849/90.

Following his indictment, Mask was represented by appointed counsel, Stephen Bartley. During a pretrial suppression motion on September 5, 1991, the court inquired whether "litigation [was] our only solution," at which time Bartley responded that litigation was inevitable because, although he had "conferred with [his] client with respect to plea negotiations [he] had with the Court as well as the assistant district attorney," that "[Mask had] indicated to me again he declines the offer." According to the government, the offer that Mask rejected was a sentence of ten years to life in prison in exchange for his guilty plea. During the same pretrial conference, the state judge confirmed with the prosecutor, Kris Watson, that the government's final "offer was ten to life[.]" The prosecutor responded that a sentence of ten to life was the "minimum time the defendant could do on one count of Robbery in the First Degree inasmuch as he's a mandatory violent persistent."[1]

On September 13, 1991, the court again inquired about the possibility of a guilty plea. On this occasion, the court felt compelled to relate to Mask that he might want to reconsider his decision not to take a plea given "the risks involved" and because his potential exposure if convicted was "astronomical," perhaps as high as thirty years to life. The prosecutor also informed the court at this hearing that she would be requesting that any sentence imposed in connection with Mask's potential conviction run consecutively to any term of imprisonment he might receive on a pend-

---

1. Under New York State Penal Law § 70.08, a "persistent violent felony offender" is a person convicted of a violent felony offense following his conviction on two prior felonies. Under the statute, a defendant cannot be classified as a violent felony offender unless the conviction and sentence for the first violent felony conviction are imposed prior to the defendant's commission of the second felony. *See* N.Y. Penal Law § 70.08(b) (incorporating by reference N.Y. Penal Law § 70.04); *see also People v. Williams*, 118 A.D.2d 410, 499 N.Y.S.2d 74 (1st Dep't 1986).

ing, unrelated larceny charge. The court then informed Mask that the evidence against him was fairly strong, and that he might later regret having declined the prosecution's plea offer.

Following this colloquy, but prior to jury selection, the court once again revisited whether Mask would be willing to enter a plea. The court questioned Mask's counsel and the prosecutor as to whether he knew what Mask's potential sentence was if he were convicted at trial. The prosecutor stated that Mask had repeatedly rejected an offer of ten years to life, and further that this was the lowest sentence that she could legally offer because of Mask's violent persistent felon status. The court and the prosecutor further discussed the possibility of the prosecutor deciding not to file for predicate felon status or offering a plea to lesser charges, but both the court and the prosecutor determined that any such action would be illegal. At this time, the prosecutor also indicated that she had discussed whether a lower sentence was legally possible with several senior trial counselors in her office, and they had all advised her that it was not legal to offer the defendant anything less than ten years to life.

After failing to reach a plea agreement, Mask proceeded to trial, and on December 3, 1991, he was convicted of two counts of first-degree robbery and one count of third-degree robbery. Following his conviction, but prior to sentencing, the fact that petitioner was not subject to the mandatory persistent violent felony provision came to light, although there is no indication in the record as to who discovered this. Although Mask had committed two prior violent felonies, because he was not sentenced on the first felony before he committed the second felony, the second

felony did not count for purposes of the statute. On February 10, 1992, Mask was sentenced to 20 to 40 years in prison. The conviction and sentence were not challenged on direct appeal.

On January 2, 1994, Mask filed a post trial motion with the trial court to vacate the judgment pursuant to New York Criminal Procedure Law § 440.10. Mask maintained that his trial counsel was ineffective by failing to inform him of the correct minimum sentence that the prosecutor could legally offer in a plea, and that Mask's belief as to the minimum available plea was overstated by counsel's failure to correct the prosecutor's assertions that Mask was a persistent violent felon under the terms of the statute. Along with his motion, Mask filed notes concerning various prior plea discussions, as well as an affidavit from the attorney who was representing him on the 440.10 motion concerning a conversation that the attorney had had with Mask's trial counsel, Bartley. According to the affidavit, Bartley informed Mask's attorney that he was under the impression that the prosecutor would have accepted a guilty plea for less than ten years to life, but for the fact that such an offer was not permitted by law. Bartley also told Mask's attorney that in the conversation in which Mask refused to accept the plea offer of ten years to life, he continued to profess his innocence. In the affidavit Mask submitted to the court, he stated that he would have considered an offer of from eight to sixteen years had it been offered to him.

In opposing Mask's motion, the State argued that Mask was precluded from raising this argument on a Section 440.10 Motion pursuant to Section 440.10(2)(b)[2] because all of the facts neces-

---

2. Section 440.10(2) provides:
Notwithstanding the provisions of subdivision one, the court must deny a motion to vacate a judgment when:

  *    *    *

(b) The judgment is, at the time of the motion, appealable or pending on appeal,

and sufficient facts appear on the record with respect to the ground or issue raised upon the motion to permit adequate review thereof upon such an appeal;
New York Crim. Pro. Law § 440.10(2)(b).

sary to develop this claim were known to Mask at the time of his direct appeal. The State has not raised preclusion or any other procedural bar in the proceeding before the district court or the proceedings here, and therefore any procedural bar has been waived. *See Trest v. Cain,* 522 U.S. 87, 89, 118 S.Ct. 478, 139 L.Ed.2d 444 (1997). The State also contended that under *People v. Baldi,* 54 N.Y.2d 137, 429 N.E.2d 400, 444 N.Y.S.2d 893 (1981), counsel had not rendered ineffective assistance of counsel because counsel's performance, when viewed in the context of the proceedings as a whole, was not constitutionally deficient.

On February 7, 1995, the state court issued a decision denying Mask's Section 440.10 Motion. The court first noted that Mask had no constitutional right to a plea bargain, and it further noted that Mask had failed to demonstrate adequately that "but-for" the failure of counsel in determining his status, Mask would have otherwise received a lower sentence from a plea. The court also concluded that given Mask's tendency to violent behavior, even if his counsel had detected the error, the "Court has serious doubts about the purported willingness of the prosecutrix to offer a lesser plea had defense counsel discovered the mistake." Finally, the court concluded that even had the prosecutor offered a lower sentence, there was no indication that the court would have accepted it.

On February 21, 1995, Mask sought leave to appeal the denial of his Section 440.10 Motion, and leave was granted on March 10, 1995. On August 29, 1995, Mask "perfected" his appeal. Mask raised essentially the same arguments on appeal that he had raised in his original Section 440.10 Motion. On January 9, 1996, the First Department of the Appellate Division affirmed the lower court and denied Mask's motion for collateral relief. *See People v. Mack,*[3] 223 A.D.2d 383, 637 N.Y.S.2d 2 (1st Dep't 1996). The First

Department ruled that counsel's failure to determine Mask's correct status for purposes of the violent persistent felon statute did not constitute ineffectiveness when examined in light of counsel's performance as a whole. The First Department, like the lower state court, stated that Mask had failed to demonstrate that counsel's error had an actual effect on either the bargain he was offered by the prosecution or the ultimate length of his sentence. On August 20, 1996, Judge Titone of the Court of Appeals denied Mask's motion for leave to appeal the First Department's decision. *See People v. Mack,* 88 N.Y.2d 989, 672 N.E.2d 621, 649 N.Y.S.2d 395 (1996).

On August 13, 1997, Mask filed a petition for a writ of habeas corpus in the United States District Court for the Southern District of New York. On July 7, 1998, Mask's counsel and the State appeared before the Honorable Denny Chin for oral argument regarding Mask's petition. During oral argument, Mask's counsel maintained that Mask was eligible for a sentence of as little as six to twelve years on a conviction of one count of robbery in the first degree. Mask's counsel conceded, however, that if all three possible sentences were imposed consecutively, Mask could have faced a total of twenty-five to fifty years in prison. Additionally, Mask argued that the peculiar operation of minimum, maximum, and life sentences with the "good time" credit system made any sentence with a maximum of life imprisonment much less advantageous. Mask claimed that because there was no good time credit for life sentences, the potential exposure was much more daunting than for a sentence containing a long maximum term because in the latter case a prisoner with good time credits would only serve two-thirds of the maximum term.

Judge Chin also explored the evidence regarding whether the prosecutor would have offered, and whether Mask would have accepted, a lower sentence had one

**3.** Petitioner Mask frequently used aliases, and the state court proceedings therefore make reference to Mack, Mask and McDaniels in the captions of his trial and appeals.

been available. Mask's counsel represented to the court that he had spoken with the original prosecutor on the case and that she had stated that had she been aware that Mask was not subject to mandatory persistent violent felon treatment, she would have offered six to twelve years on each of the three counts, to run consecutively. Mask's counsel and the court both seemed uncertain whether this term of eighteen to thirty-six years was any better than the plea of ten years to life sentence that the prosecutor actually offered Mask.

Judge Chin concluded, however, that had the prosecutor known that Mask did not have to be sentenced as a persistent violent felon, "the People would have been willing to do something better." Judge Chin stated that the question that remained was what type of offer the prosecutor would have made at the time in light of the knowledge of Mask's true criminal status. Judge Chin then stated that it was his belief after reading the record that both the court and the prosecutor were looking to secure a plea bargain, and it was therefore likely that had both parties been aware that they could offer a lower sentence than that provided for in the persistent violent felon statute, they likely would have pursued this as an option. Judge Chin indicated that it might be necessary to hold an evidentiary hearing in which the former prosecutor would testify and be subject to cross-examination.

Judge Chin then turned to the other major factual question concerning whether Mask would have indeed accepted a better offer had it been made to him. In addressing this issue, the State maintained that because Mask continued to maintain his innocence while rejecting prior plea

offers, it was unlikely that he would have taken any plea bargain, and that Mask's affidavit never provides a clear, definitive statement that he would have taken a plea bargain had it included a lower sentence. The court reasoned that live testimony from Mask was not necessary inasmuch as it was likely to consist only of a statement that he would have taken any plea that was better than the ten to life he received following trial. The court further explained that Mask's protestations of innocence were not dispositive of the question of whether he would have taken a better plea because, as the trial judge noted, the evidence against Mask was strong, and thus had counsel been able to secure a better plea, Mask might have been inclined to accept it.

In concluding the hearing, Judge Chin stated that he "[did not] think counsel [was] effective here." Moreover, he had "serious questions as to whether there was prejudice in that sentence sense," and also regarding the question of whether "Mr. Mask indeed would have done something differently." Judge Chin acknowledged that while Mask's trial counsel may have been a fine courtroom attorney, his failure to determine accurately Mask's potential sentencing exposure was an egregious error.

On November 4, 1998, and following an exchange of letters with both sides arguing the same basic positions as they had advanced previously, Judge Chin conditionally granted Mask's petition for a writ of habeas corpus "unless respondents agree to (i) reduce petitioner's sentence to a term of eight to sixteen years or (ii) grant him a new trial." *See Mask v. McGinnis*, 28 F.Supp.2d 122, 126 (S.D.N.Y.1998).[4] Judge Chin's opinion relied heavily upon

4. Judge Chin's Memorandum Decision directs that Mask's petition for a writ of habeas corpus be granted unless respondents reduce Mask's sentence or grant him a new trial. The respondents in this case are the Attorney General and the Warden of the prison where Mask is currently incarcerated. Neither of these officials has the power to award the

specified relief. We therefore assume that this reference in the Memorandum Decision was a mistake that Judge Chin remedied in his Judgment, which conditions the granting of the writ not on respondents' actions, but simply on the reduction of Mask's sentence or the grant of a new trial.

this Court's decision in *United States v. Gordon*, 156 F.3d 376 (2d Cir.1998) (per curiam), for the proposition that counsel's failure to be effective at the plea bargain stage could constitute ineffective assistance. *See Mask*, 28 F.Supp.2d at 124–25. Judge Chin also noted that Mask's affidavit established a reasonable probability that he would have accepted a more lenient plea if it had been offered to him, and that there was a reasonable probability that the prosecutor would have made a more lenient offer had she been aware that Mask's status did not compel her to file under the persistent violent felon statute. *See id.* at 125–26. With regard to the necessity of any testimony, Judge Chin concluded that he found the prosecutor's statements on the record seven years earlier much more convincing that any that she might now make, and that Mask's testimony was not necessary because the State manifested no desire to cross-examine him. *See id.* at 126 n. 6.

The State filed a notice of appeal on December 14, 1998. On March 23, 1999, the district court's order conditionally granting the habeas petition was stayed pending resolution of this appeal. On appeal, the State argues that the district court improperly disregarded the conclusions of the state court, and that the district court therefore erred in granting the writ.

## II. DISCUSSION

■ We review a district court's decision granting a petition for writ of habeas corpus de novo. *See Smalls v. Batista*, 191 F.3d 272, 277 (2d Cir.1999). Under the Anti–Terrorism and Effective Death Penalty Act, which governs habeas petitions by state prisoners, "the writ may issue only if ... the state-court adjudication resulted in a decision that (1) 'was contrary to ... clearly established Federal law, as determined by the Supreme Court of the United States,' or (2) 'involved an unreasonable application of ... clearly established Federal law, as determined by

the Supreme Court of the United States.' " *Sacco v. Cooksey*, 214 F.3d 270, 273 (2d Cir.2000) (per curiam) (quoting *Williams v. Taylor*, 529 U.S. 362, 120 S.Ct. 1495, 1523, 146 L.Ed.2d 389 (2000)).

The State's primary argument on appeal is that the district court erred by failing to credit factual findings of the state court that reviewed Mask's Section 440.10 Motion, as well as the findings and conclusions of the First Department. The State contends that under 28 U.S.C. § 2254(d)(2) and (e)(1) a federal court is obligated to give deference to the factual determinations of a state court and cannot grant the writ unless the state court's decision resulted in an unreasonable application of clearly established federal law.

28 U.S.C. § 2254(d) provides:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(e)(1) provides:

In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

In arguing that these two provisions bar relief in this case, the State contends that

Mask cannot demonstrate any error in the state courts' determination of key factual issues, and that he also cannot demonstrate prejudice with sufficient certainty to support granting the writ. The State further contends that nothing has changed since the state court decisions, and thus the district court erred in failing to respect the findings found in that opinion.

■ In the lower state court decision on Mask's Section 440.10 Motion, the court states that "[d]efendant has not shown that but for the error, which was shared by all parties including the Court, he would have been offered and would have accepted a more advantageous bargain," and that Mask's contentions thus amount to "speculation." Nowhere in the state court decision does the court refer to the correct standard for assessing ineffectiveness claims—that petitioner is required to demonstrate only *"reasonable probability"* that "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Boria v. Keane,* 99 F.3d 492, 496 (2d Cir.1996) (emphasis added) (reversing district court's decision denying habeas petition after determining that counsel's failure to advise client of slim chances of success at trial constituted "ineffective assistance" that created "reasonable probability" that results would have been different had counsel been effective) (citing *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)); *see also Gordon,* 156 F.3d at 381 (stating test as reasonable probability that result would have been different).

■ Instead, the state court's insistence on certainty (an even higher standard than preponderance of the evidence) represents an "unreasonable application of[ ] clearly established Federal law," 28 U.S.C. § 2254(d)(1), in light of the requirement that a petitioner need only show that but for counsel's errors there was a "rea-sonable probability" that the result of the plea bargaining process would have been different. As the Supreme Court said,

> If a state court were to reject a prisoner's claim of ineffective assistance of counsel on the grounds that the prisoner had not established by a preponderance of the evidence that the result of his criminal proceeding would have been different, that decision would be "diametrically different," "opposite in character or nature," and "mutually opposed" to our clearly established precedent because we held in *Strickland* that the prisoner need only demonstrate a "reasonable probability that ... the result of the proceeding would have been different."

*Williams v. Taylor,* 529 U.S. 362, 120 S.Ct. 1495, 1519, 146 L.Ed.2d 389 (2000) (citation omitted). Furthermore, the state court's "factual findings," relied on by the State, constitute nothing more than a determination that Mask failed to meet a burden that he was not required to meet in order to obtain relief. We therefore reject the State's contention that the district court improperly rejected the factual conclusions of the state courts. In this particular instance, the state court's determination of factual issues (to the extent that these determinations are properly characterized as factual) were so closely intertwined with the state court's articulation of an erroneous legal standard, to which we owe no deference, that we can discern no independent factual issues to which we should defer. *Cf. Cullen v. United States,* 194 F.3d 401, 407–08 (2d Cir.1999). The factual conclusions made by the state court simply have no bearing upon the ultimate legal determination required in this case. Thus, the district court committed no error in refusing to accept the state courts' conclusions as determinative under 28 U.S.C. § 2254(e).[5]

---

5. Although the fact-finding court insisted on certainty-a much higher standard than the lower "reasonable probability" threshold, the Appellate Division in affirming recited the latter, correct legal standard. *See Mack,* 223 A.D.2d at 383, 637 N.Y.S.2d at 2. When we are asked under the AEDPA to apply a stringent rule of deference to state court factual

■ The State advances two specific arguments regarding the district court's failure to afford deference to the state court's prior determinations. First, the State attacks the district court's reliance on Mask's affidavit concerning whether he would have accepted a plea offer if it had included a sentence of less than 10 years to life. According to the State, Mask's affidavit is insufficient both in what it states and in what weight it should be afforded in making a determination regarding the existence of prejudice. Mask's affidavit states that:

3. Prior to this case going to trial, I was willing to consider pleading guilty if the prosecution had offered a guilty plea with a sentence of less than 10 years to life. I rejected the 10 years to life plea offer because this offer was not reasonable. A plea offer that I would have considered to be reasonable would have been 8 to 16 years.

4. After I rejected the 10 years to life plea offer, I was aware, based upon my conversations with Steven Bartley, that he was negotiating with the trial prosecutor for a more lenient plea bargain. I was agreeable to such negotiations.

The State maintains that such equivocal statements by Mask constitute "a study in evasion," and that the statements do not provide an indication that Mask was prejudiced in this case. The State argues that Mask's statements fail to evince a specific intent on his part, and that it is thus sheer speculation that he was prejudiced by counsel's misrepresentation of his minimum exposure in the absence of any indi-

cation that he would have taken a more favorable plea.

It is true that Mask's affidavit is not a direct statement that he would have accepted any plea that was more favorable than ten years to life. It is also true, however, that Mask stated in his affidavit that a plea involving a sentence of eight to sixteen years was one he considered reasonable. In the context of his affidavit, it is clear that if Mask rejected a plea because it was unreasonable, the fact that he viewed a plea of eight to sixteen years as reasonable renders it highly probable that he would have accepted it. Given the context in which this claim arises, we agree with the district court that Mask's affidavit constitutes a sufficiently affirmative statement that he would have accepted a better plea agreement had it been offered. *See Mask,* 28 F.Supp.2d at 125–26.

■ The State also relies upon the premise that a petitioner's affidavit asserting that he would have taken a lighter sentence is inherently self-serving and therefore must be supported by objective evidence. *See* Appellant's Br. at 18 (citing *Gordon,* 156 F.3d at 381; *Paters v. United States,* 159 F.3d 1043, 1047–48 (7th Cir. 1998)). However, this Court in *Gordon* announced that "a [great] disparity [between the actual sentence and the sentence that effective counsel would have secured for the defendant] provides sufficient objective evidence—when combined with a petitioner's statement concerning his intentions—to support a finding of prejudice under *Strickland.*" *Id.* at 381; *see also Cullen,* 194 F.3d at 407–08 (stating that disparity between actual sentence and

determinations that affect our application of federal law on habeas review, we can do so only when we know that the state court had, in fact, considered the factual issue that we determine to be dispositive. Here, the Appellate Division's summary recitation of the federal rule cannot transform the lower court's inapposite determinations under one standard into factual findings under the correct standard that require deference under 28 U.S.C. §§ 2254(d)(2), (e)(1). To the extent, instead, that the Appellate Division's decision can be read to have applied the "reasonable proba-

bility" standard to a finding that no prejudice was shown to a certainty, and to have concluded that therefore no probability of a different sentence was shown, it applied Supreme Court precedent in an unreasonable fashion and, hence, is not entitled to our deference under § 2254(d)(1). *See Strickland,* 466 U.S. at 693, 104 S.Ct. 2052 ("[A] defendant need not show that counsel's deficient conduct more likely than not altered the outcome in the case."); *see generally Williams,* 120 S.Ct. at 1518–23.

sentence available through plea bargain is a factor in determining whether petitioner suffered prejudice). In this case, there is a large disparity between the defendant's sentence exposure following a trial and his potential exposure had a plea offer been made on the basis of accurate information. This disparity, coupled with Mask's statements that he would have accepted a reasonable offer as credited by the district court, satisfies the prejudice requirement that we articulated in *Gordon.*

The State also maintains that Mask's protestations of innocence indicate that it is unlikely that he would have agreed to any plea offer. This Court has previously stated such contentions of innocence by a defendant are not entirely dispositive. *See Cullen,* 194 F.3d at 407 ("Though Cullen's insistence on his innocence is a factor relevant to any conclusion as to whether he has shown a reasonable probability that he would have pled guilty, it is not dispositive."). Taken in light of the other evidence of Mask's intentions, we see no reason to depart from the reasoning of *Cullen,* and we therefore agree with the district court that Mask's protestations of innocence do not forestall a conclusion that he would have been amenable to a reasonable plea offer.

The State's second argument challenges the district court's conclusion that the prosecutor would have made a better offer had the prosecutor believed that she was permitted to do so. Once again, however, we disagree that the state court made any factual determination concerning this issue that the district court was obligated to defer to. The state court simply stated that it had "serious doubts" as to whether the prosecutor would have made a better offer. In light of the evidence presented, however, we agree with the district court that every indication in the record supports the conclusion that the prosecutor would have made a better plea offer had she not felt that she was bound by the mandatory violent persistent felon provision. As such, we find no error in the district court's determination.

Finally, the State points to the state court's assertion in its ruling on Mask's 440.10 Motion that "this Court's acceptance of such an agreement [for 6 to 18 years] cannot be presumed[, and] [the Court's] view of an appropriate punishment for defendant's conduct is reflected in the sentences imposed." The State argues that the fact that the state court might not have approved a better plea agreement prevents granting the writ in this case.

We reject this argument as well. First, nothing in the standards established by the Supreme Court in either *Strickland* or *Hill* require an evaluation of whether the court would have accepted a different plea agreement. *See Hill v. Lockhart,* 474 U.S. 52, 59, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985) (stating that evaluation of likelihood that the result would have been different but for counsel's ineffectiveness "should be made objectively, without regard for the 'idiosyncrasies of the particular decisionmaker.'") (quoting *Strickland,* 466 U.S. at 695, 104 S.Ct. 2052). Second, despite the state court's later statements, our review of the contemporaneous statements made by the state court convinces us that the state court might well have accepted a more generous plea. The court repeatedly asked Mask's counsel and the prosecutor about the prospects of avoiding a trial. The court demonstrated a thorough knowledge of the various offers made by the prosecutor, and continued to push for a plea. Had the trial court been aware at the time that Mask was not subject to mandatory violent felony offender status, we think it is likely that the court would have approved a lesser plea.

## III. CONCLUSION

For the reasons set forth above, the decision of the district court is hereby AFFIRMED.