**Shahawar Matin SIRAJ, Petitioner,**

v.

**UNITED STATES of America, Respondent.**

**No. 10–cv–00971 (NG).**

United States District Court, E.D. New York.

Aug. 30, 2013.

Robert J. Boyle, Robert J. Boyle, Esq., New York, NY, for Petitioner.

Marshall L. Miller, United States Attorneys Office, Brooklyn, NY, for Respondent.

### *OPINION AND ORDER*

GERSHON, United States District Judge:

Petitioner Shahawar Matin Siraj, through counsel, moves to vacate his conviction and sentence under 28 U.S.C. § 2255. Following a jury trial, petitioner was convicted of four conspiracy counts related to a scheme to commit a terrorist attack at the 34th Street–Herald Square subway station in Manhattan. This court sentenced Siraj to 30 years' imprisonment for his role in the conspiracy. Siraj's conviction was affirmed by opinion, in *United States v. Siraj*, 533 F.3d 99 (2d Cir.2008), and summary order, *United States v. Siraj*, No. 07–0224–cr, 2008 WL 2675826 (2d Cir. July 9, 2008). The Supreme Court denied Siraj's petition for a writ of certio-

rari. *Siraj v. United States,* 555 U.S. 1200, 129 S.Ct. 1384, 173 L.Ed.2d 637 (2009).

Siraj now presents a single claim of ineffective assistance of counsel, alleging that his trial counsel failed to properly advise him during plea negotiations in two respects. Principally, Siraj asserts that he was not adequately advised that the defense of withdrawal from the conspiracy, a defense he believed was sound, was not a viable defense; had he been so advised, he says that he would have favorably considered a plea of guilty. Secondly, he argues that his lawyers' advice that the defense of entrapment had a "50/50" chance of success at trial was an overestimate; once again, he says that he would have favorably considered pleading guilty to the charges had he known that this defense was less likely to succeed. Since the undisputed facts conclusively show that Siraj is entitled to no relief, the petition is denied without a hearing.

## DISCUSSION

### I. Standard of Review

■ A prisoner held in federal custody may "move the court which imposed the sentence to vacate, set aside, or correct the sentence." 28 U.S.C. § 2255(a). To obtain relief under section 2255, a petitioner must establish that the sentenced imposed was, among other grounds, "in violation of the Constitution or laws of the United States." *Id.* The Sixth Amendment guarantees the right to effective assistance of counsel at all "critical stages of a criminal proceeding," *United States v. Wade,* 388 U.S. 218, 226, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967), including during, the plea-bargaining process, *see, e.g., Padilla v. Kentucky,* 559 U.S. 356, 373–74, 130 S.Ct. 1473, 1486, 176 L.Ed.2d 284 (2010). While a criminal defendant "has no right to be offered a plea ... nor a federal right that the judge accept it," *Missouri v. Frye,* ——

U.S. ——, 132 S.Ct. 1399, 1410, 182 L.Ed.2d 379 (2012), "[i]f a plea bargain has been offered, a defendant has the right to effective assistance of counsel in considering whether to accept it," *Lafler v. Cooper,* 566 U.S. ——, 132 S.Ct. 1376, 1387, 182 L.Ed.2d 398 (2012). *See also Gonzalez v. United States,* 722 F.3d 118, 129–31 (2d Cir.2013).

■ Claims of ineffective assistance of counsel in the plea context, like other ineffectiveness claims, are governed by the familiar standard set forth in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *See Frye,* 132 S.Ct. at 1405 (citing *Hill v. Lockhart,* 474 U.S. 52, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985)). To succeed on such a claim, a petitioner must first "show that counsel's representation fell below an objective standard of reasonableness," that is, that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland,* 466 U.S. at 687–88, 104 S.Ct. 2052. To provide constitutionally adequate representation during plea negotiations, a lawyer must generally advise the client of any offer that the government extends, *Frye,* 132 S.Ct. at 1408 (citing *Pham v. United States,* 317 F.3d 178, 183 (2d Cir.2003)); outline "the strengths and weaknesses of the case against him," *Purdy v. United States,* 208 F.3d 41, 45 (2d Cir.2000); and provide an estimate of the defendant's sentencing exposure at trial, *id.* Judicial review of counsel's performance is "highly deferential," and courts "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland,* 466 U.S. at 689, 104 S.Ct. 2052.

■ Second, petitioner must establish that "the deficient performance prejudiced the defense," *id.* at 687, 104 S.Ct. 2052,

such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," *id.* at 694, 104 S.Ct. 2052. With respect to a claim that counsel's ineffective assistance caused a criminal defendant to reject a plea offer:

> a defendant must show that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (*i.e.*, that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed.

*Lafler*, 132 S.Ct. at 1385. At bottom, the "defendant must show the outcome of the plea process would have been different with competent advice." *Id.* at 1384.

▮▮▮▮ In response to a section 2555 motion, the district court must hold a hearing "[u]nless the motion and the files and records of the case conclusively show that the petitioner is entitled to no relief." 28 U.S.C. § 2255(b); *see also Pham*, 317 F.3d at 185 (motions that present facially valid claims are not subject to summary dismissal). With respect to claims of ineffectiveness of counsel, the petitioner need establish only that he has a "plausible" claim of ineffective assistance, not that "he will necessarily succeed on the claim." *Armienti v. United States*, 234 F.3d 820, 823 (2d Cir.2000) (internal quotations omitted). Viewing the evidentiary proffers and the record "in the light most favorable to the petitioner," the court must determine whether "the petitioner, who has the burden, may be able to establish at a hearing a *prima facie* case for relief." *Puglisi v. United States*, 586 F.3d 209, 213 (2d Cir. 2009). However, "[i]f it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion." *Id.* (internal quotations omitted).

## II. Petitioner's Claim of Ineffective Assistance of Counsel

▮▮▮▮ In moving to vacate his sentence pursuant to 28 U.S.C. § 2255, Siraj claims that his trial counsel's performance during the plea-bargaining process fell below an "objective standard of reasonableness" in two respects: first, that trial counsel failed to advise him that his trial testimony would be insufficient to establish the defense of withdrawal from the conspiracy to commit a terrorist attack at the 34th Street–Herald Square subway station; and second, that trial counsel overestimated the strength of his entrapment defense. Petitioner argues that, had he been properly advised, he "would have accepted" either of the two plea offers he contends the government extended to him during the pretrial process. *See* Decl. of Shahawar Matin Siraj ("Siraj Decl.") ¶ 15.

During plea negotiations, a lawyer must generally advise the client of any plea offers, discuss the strengths and weaknesses of the government's case, and estimate the defendant's sentencing exposure if he proceeds to trial. *See Frye*, 132 S.Ct. at 1408; *Pham*, 317 F.3d at 183; *Purdy*, 208 F.3d at 45. The undisputed record affirmatively establishes that Siraj's attorneys kept him advised of the plea overtures made by the government, *see, e.g.*, Siraj Decl. ¶¶ 10, 13; gave him their advice about the government's evidence against him, and the likelihood or unlikelihood of his defenses being successful, *id.* ¶¶ 8, 11, 13; and provided an estimate of his sentencing exposure at trial, as compared to the significantly lower numbers discussed in the plea negotiations, *id.* ¶¶ 10–11, 13.

This is precisely what we expect competent counsel to do.[1]

With respect to petitioner's specific claims of ineffective assistance, Siraj first contends that his trial counsel failed to advise him that his trial testimony would be insufficient to support the defense of withdrawal from the conspiracy. The declarations of petitioner, his habeas counsel, and his principal trial counsel establish that trial counsel advised Siraj that the recorded evidence of petitioner's final meeting with co-conspirator James Elshafay and government informant Osama Eldawoody on August 23, 2004—which revealed that Siraj agreed to act as a lookout during the planned terrorist attack—did not support a potential withdrawal defense.[2] Siraj Decl. ¶ 8; Declaration of Robert J. Boyle ("Boyle Decl.") ¶¶ 40, 46; Declaration of Martin R. Stolar ("Stolar Decl.") ¶ 3.

During the course of pretrial discovery, the government had provided defense counsel with tapes of recorded conversations between Siraj, Elshafay, and Eldawoody. These tapes, which were part of the government's evidence at trial, established that Siraj was the principal architect of the plan to bomb the 34th Street–Herald Square subway station. Siraj identified the 34th Street subway station as a potential target for a terrorist attack; surveyed the subway station, first on his own, and then with Elshafay and Eldawoody; devised means to evade detection by law enforcement officials during these visits; and formulated plans on where best to place the bombs. The recording of petitioner's last meeting with Elshafay and Eldawoody on August 23, 2004, further established that petitioner, despite vacillating and expressing misgivings about going forward with the conspiracy, ultimately agreed to act as a lookout during the planned attack on the 34th Street–Herald Square subway station.

Trial counsel reviewed these tapes with Siraj, who professed that, by the end of the August 23, 2004 meeting with Eldawoody and Elshafay, he had determined to back out of the planned attack. It is undisputed that counsel advised petitioner that the contents of the recording of the August 23, 2004 meeting did not establish a withdrawal defense. Siraj Decl. ¶ 8 (conceding that his attorneys told him "that the tape itself probably would not establish a defense because I stated I would be a lookout"); Boyle Decl. ¶ 40 (affirming that counsel told Siraj that his recorded statements "did not constitute a defense to the charges").

Siraj does not contend that counsel's advice in this respect was deficient. Rather, he alleges that he was unaware that, even if he explained at trial that by the end of his last meeting with Eldawoody and Elshafay, he "had no intention of participating in the plan and in [his] own mind had left it," Siraj Decl. ¶ 7, this additional

---

1. *United States v. Gordon*, 156 F.3d 376 (2d Cir.1998) and *Mask v. McGinnis*, 233 F.3d 132 (2d Cir.2000), upon which petitioner relies, are unavailing. Both *Gordon* and *Mask* involve highly erroneous advice about the defendants' sentencing exposure. There is nothing in the record here to suggest that any of the information or advice provided to petitioner regarding his sentencing exposure was incorrect. To the contrary, Siraj affirms that his lawyers advised him, correctly, that if convicted of all charges at trial, the maximum sentence was life, but that he "would probably get a sentence of 20–30 years." Siraj Decl. ¶ 11. Siraj in fact received a sentence of 30 years.

2. After his arrest on August 27, 2004, Siraj was initially represented by the Office of the Federal Defender. On January 12, 2005, Siraj retained private counsel, and was thereafter represented by a team of three attorneys: Martin Stolar, Khurrum Wahid, and Sean Maher. Of these attorneys, only Stolar, his principal attorney, submitted a declaration in support of Siraj's habeas petition.

testimony would be insufficient to establish a withdrawal defense. According to Siraj, his trial counsel were ineffective because they failed to advise him that, notwithstanding his intent to abandon the plan, his failure to take any affirmative action to disavow the conspiracy precluded a withdrawal defense as a matter of law. Pet'r's Mem., at 5–6; *see, e.g., United States v. Leslie,* 658 F.3d 140, 143 (2d Cir.2011) (holding that, absent an affirmative act to renounce the conspiracy, "[m]ere cessation of the conspiratorial activity by the defendant is not sufficient to prove withdrawal").

■■■ Notably, however, Siraj does not claim that defense counsel ever so much as suggested that a withdrawal defense would be available under the facts of his case.[3] Nor does Siraj claim that, after trial counsel informed him that the recorded evidence did not support a withdrawal defense, he ever expressly told counsel that he believed that his trial testimony would nonetheless be sufficient to support such a defense. *See* Siraj Decl. ¶¶ 6–14. At bottom, Siraj's ineffectiveness claim rests not on any erroneous advice of counsel, but rather on counsel's alleged failure to disabuse petitioner of his subjective and unexpressed belief that his planned trial testimony would be sufficient to establish the defense of withdrawal from a conspiracy. But Siraj offers no legal basis for requiring his trial counsel to surmise that he mistakenly believed that, despite their advice, he had a viable withdrawal defense, or to have done more than they did in advising him regarding that defense. Divining the secret misconceptions of clients is not required of effective counsel. *See, e.g., Dooley v. Petsock,* 816 F.2d 885, 891

(3d Cir.1987) (observing that, where a defendant fails to provide relevant information to his lawyers, "clairvoyance is not required of effective trial counsel").

■■■ Turning to his secondary claim, Siraj argues that, based on the actual trial testimony, counsel's advice that his entrapment defense had a "50/50" chance of succeeding at trial grossly overstated the actual likelihood of success, thereby causing him to reject the government's plea overtures. *See.* Pet'r's Mem., at 11. This claim also lacks merit. Critically, nowhere does Siraj assert that he would have pled guilty had he known that his chances of success on the entrapment defense were less than 50%. To the contrary, he claims only that he would have pled guilty if he had known that he would have to rely solely on an entrapment defense, *i.e.,* that the withdrawal defense was not viable. Siraj Decl. ¶ 15. Accordingly, even if Siraj could show that counsel's estimate was not professionally sound, he cannot establish that he was prejudiced as a result.

■■■ In any event, on the facts known to defense counsel before trial, the "50/50" estimate cannot be viewed as beyond the realm of professionally reasonable advice. To establish the affirmative defense of entrapment, a defendant must make an initial showing that the government induced him to commit the charged crime; if the defendant does so, the burden then shifts to the government to prove beyond a reasonable doubt that the defendant was predisposed to commit the crime. *United States v. Brand,* 467 F.3d 179, 189 (2d Cir.2006).

■■■ In arguing that counsel's estimate of a 50% chance of prevailing on the en-

---

**3.** Siraj's trial counsel affirms that they advised petitioner that the recorded evidence "did not establish a defense based upon withdrawal from the conspiracy," but they could not "recall whether they further advised the petitioner" that his planned trial testimony also would be insufficient to establish the defense. Boyle Decl. ¶ 46; *see also* Stolar Decl. ¶ 3.

trapment defense at trial grossly overstated Siraj's chances, petitioner relies first on my decision on Siraj's Rule 29 motion in support of a judgment of acquittal on the entrapment defense, *United States v. Siraj*, 468 F.Supp.2d 408, 414–17 (E.D.N.Y.2007). But, of course, Rule 29 requires that the court view the evidence admitted at trial in the light most favorable to the prosecution. *See United States v. Florez*, 447 F.3d 145, 154–55 (2d Cir. 2006). Even though I concluded, under that standard, that the defendant's evidence of inducement was "scant," 468 F.Supp.2d at 415, prior to trial even the government had accepted that entrapment presented a triable issue, *i.e.,* that the entrapment defense could not be denied as a matter of law for lack of evidence of inducement. Therefore, the possibility existed that the jury would credit petitioner's version of the facts.

On summation, defense counsel emphasized numerous factors supporting the defense theory that government informant Osama Eldawoody induced petitioner to conspire to commit an attack at the 34th Street–Herald Square subway station. Counsel argued that Siraj was desperate for Eldawoody's approval and was easily swayed, particularly because Eldawoody was twice the age of the young defendant. Trial Tr. 3634. He stressed that Eldawoody represented himself to be a nuclear scientist and Islamic scholar, and that the defendant looked up to him as a big brother. *Id.* 3634–37. He also relied on the testimony of defendant's mother as to how impressed the defendant was by Eldawoody, with whom he spent a great deal of time.

Defense counsel emphasized that Siraj had never committed any crimes until he met Eldawoody and that it was only after Eldawoody used his position of influence over the younger Siraj that Siraj became willing to commit a terrorist act. *Id.*

3632–37. Counsel argued that, during the first three months that Eldawoody visited the Bay Ridge bookstore where Siraj worked, all of the conversations between Eldawoody and Siraj were non-violent. *See id.* 3634–35. Then, according to defense counsel, it was Eldawoody who first brought up the idea of a terrorist attack using a dirty bomb and volunteered that he knew how to make one, but even then nothing of significance was discussed during the next four months. *Id.* 3635–40. Counsel argued that, during that period, Eldawoody continued to work on petitioner, becoming his confidant in Islam and inciting him with stories and pictures of Muslims being humiliated by Americans at Abu Ghraib, in a persistent effort to induce Siraj to commit violent acts. *Id.* 3639–54.

All of these arguments in support of inducement were based upon evidence presented at the trial, including the testimony of the defendant. That the jury, based upon other evidence presented by the government, chose not to accept this version of events does not render counsel's pretrial assessment of petitioner's chances unconstitutionally defective. *See Lafler,* 132 S.Ct. at 1391 (observing that "an erroneous strategic prediction about the outcome of a trial is not necessarily deficient performance").

At trial, Siraj testified that, prior to meeting Eldawoody, he had never considered committing violent acts, *see, e.g.,* Trial Tr. 2847, and that he had never talked about supporting terrorism, *id.* 2272–92. As petitioner's habeas counsel acknowledges, however, the entrapment defense was significantly undermined by the rebuttal testimony of an undercover NYPD officer, under the name Kamil Pasha. Boyle Decl. ¶ 14 n. 2. Pasha related that, prior to meeting Eldawoody, Siraj had made numerous statements that tended to prove his predisposition to commit the charged crimes. *Id.* Petitioner's counsel further

acknowledges: "Pasha's testimony [regarding statements by Siraj expressing support for terrorist attacks] was not known to trial counsel during the pre-trial proceedings when plea negotiations were taking place. Accordingly it could not have played a role in their advice to petitioner about whether he should plead guilty." Boyle Decl. ¶ 14 n. 2; *see also Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir.1994) ("In assessing the attorney's performance, a reviewing court must judge his conduct on the basis of the facts of the particular case, 'viewed as of the time of counsel's conduct,' and may not use hindsight to second-guess his strategy choices.") (quoting *Strickland*, 466 U.S. at 690, 104 S.Ct. 2052).

In sum, counsel's advice that there was a "50/50" chance of success on the entrapment defense cannot be said to be outside "the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689, 104 S.Ct. 2052.[4]

## CONCLUSION

For the reasons discussed above, petitioner's motion to vacate his conviction and sentence under 28 U.S.C. § 2255 is DENIED. Because petitioner has not "made a substantial showing of the denial of a constitutional right," a certificate of appealability will not issue. 28 U.S.C. § 2253.

**SO ORDERED.**

---

4. Because I conclude that Siraj has failed to show that his counsel's performance fell below an "objective standard of reasonableness," I do not resolve whether petitioner suffered prejudice under the *Strickland* test, except as noted above. See *Strickland*, 466 U.S. at 697, 104 S.Ct. 2052 ("[T]here is no reason for a court deciding an ineffective assistance claim ... to address both compo-

nents of the inquiry if the defendant makes an insufficient showing on one."); *Torres v. Donnelly*, 554 F.3d 322, 327 (2d Cir.2009) (same). Therefore, I need not determine whether plea discussions had advanced sufficiently to give rise to a reasonable probability that, had counsel acted differently, the outcome of the proceedings would have been different.