NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 13-2083
_____

UNITED STATES OF AMERICA

v.

JOANNE M. SEELEY,
                    Appellant
_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA
(D.C. Cr. Action No. 1-11-cr-00056-001)
District Judge: Honorable Sylvia H. Rambo
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
March 21, 2014
_____

Before: CHAGARES, GREENAWAY, JR., and VANASKIE, *Circuit Judges*.

(Opinion Filed: July 17, 2014)

_____

OPINION
_____

GREENAWAY, JR., *Circuit Judge*.

Joanne M. Seeley ("Appellant") appeals from the District Court's order denying

her petition seeking the issuance of a writ of habeas corpus pursuant to 28 U.S.C. § 2255.

1

Appellant also contends that the District Court erred in failing to hold a competency hearing *sua sponte* prior to her sentencing. For the following reasons, we will affirm the District Court's denial of her habeas petition, and find that the District Court did not err in failing to hold a competency hearing.

## I. Facts and Procedural History

Because we write primarily for the benefit of the parties, we recount only the facts essential to our discussion.

Between 2005 and 2008, Seeley masterminded a scheme that ultimately defrauded the owners of 46 homes out of more than $2.4 million. Seeley convinced the owners of properties facing foreclosure to sell their properties to her. Seeley then assured each homeowner that she would lease the property back to them temporarily, and allow them to purchase the property back within a year. Homeowners would sign over the equity in their properties to her to be placed in escrow as a down payment on the repurchase of those properties. However, instead of delivering the funds to escrow, she converted the funds to her own use. In order to perpetuate her scheme, Seeley submitted numerous false statements and other documentation to lending institutions in order to obtain the mortgages necessary to purchase the foreclosure rescue properties.

On February 23, 2011, a grand jury in the Middle District of Pennsylvania issued a 10-count indictment alleging five counts of wire fraud, and five counts of money laundering.

Seeley contends that her lawyer, Lori Ulrich, was aware of her history of mental

illness from the outset of their attorney/client relationship, admitting to Ulrich that she suffered from Bipolar disorder. Seeley's mental health issues created problems, principally communicative, between she and Ulrich. At times, Seeley failed to return Ulrich's phone calls or assist in discussing the impending trial. In light of these difficulties, Ulrich arranged for Seeley to undergo a private competency hearing. Ulrich opted for a private consultation, in part, because she did not want to subject Seeley to the risk of being placed in the Bureau of Prisons' custody.

On June 30, 2011, Seeley visited Dr. Kristi Compton of Dallas, Texas for a competency evaluation. As a result of the visit, Dr. Compton issued a competency report. Dr. Compton indicated that Seeley: 1) had a sufficient factual and rational understanding of the role of each party in a criminal justice proceeding; 2) was significantly impeded in her ability to comprehend instructions and to make rational decisions regarding her case; 3) was prevented from being able to testify calmly and rationally; 4) was at risk of engaging in inappropriate behavior in the courtroom; and 5) was able to assist her attorney in a fact-finding and/or mitigation investigation, though when in a manic state, her ability to do so would be "unlikely."

As a result of these findings, Dr. Compton concluded that Seeley was not competent to stand trial. However, the Doctor did note that with some adjustments to Seeley's medication, she could return to competency with outpatient treatment in as little as four weeks.

The next day, Ulrich received a plea offer from the United States Attorney's

3

Office.

Ulrich and Seeley spoke by phone two times on July 11, 2011. They discussed Dr. Compton's findings, and Seeley agreed to follow-up with her treating psychiatrist for medication management in an effort to progress towards competency. Due to continued communication problems and concerns that Seeley was not taking her medication in sufficient doses to restore her competency, Ulrich and an investigator from the Federal Public Defender's Office traveled to Texas in mid-July 2011 to meet with Seeley. At the meeting, Seeley and Ulrich discussed the case for hours and Seeley proved to be helpful in preparing her defense. They also discussed the government's plea offer, despite Dr. Compton's finding of Seeley's incompetency to stand trial. Seeley was not interested in pleading guilty, rather she continued to avow her innocence.

In light of the meeting and how Seeley comported herself, Ulrich believed that Seeley understood the nature of the plea agreement she had rejected. On the other hand, Ulrich also continued to be concerned about Seeley's failure to adjust her medications.

After the meeting, Ulrich sent Seeley a letter expressing her concern that Seeley had not taken the steps necessary to return herself to competence. Ulrich warned Seeley that she (Ulrich) would be obligated to a file a motion for a competency hearing with the District Court if Seeley did not cooperate with her. The warning compelled Seeley to adjust her medication. Upon reevaluation in September, Dr. Compton found Seeley to be competent to stand trial.

At Seeley's trial, the jury convicted Seeley on eight counts. After her conviction,

Seeley was displeased with Ulrich's performance as her lawyer. In June 2012, Seeley submitted a letter to the District Court requesting new counsel. In the letter, Seeley complained that Ulrich had not alerted the District Court to Seeley's incompetency prior to trial, and had discussed the July 1, 2011 plea offer with her while she was incompetent. This letter was the initial notice to the District Court of Seeley's mental issues and incompetency.

On July 11, 2012, the District Court conducted an *ex parte* hearing. Seeley presented her arguments regarding Ulrich's removal. As part of the hearing, Seeley informed the court that she was taking new medications and she was not yet up to therapeutic dosage levels. Ulrich testified that she had no reason to doubt Seeley's competency prior to trial, nor in light of Seeley's impending sentencing hearing. While on the stand, Ulrich pointed to a meeting and email communication to demonstrate that Seeley appeared competent. The District Court declined to remove Ulrich as counsel, and no competency hearing was requested or ordered as a result of that hearing.

Seeley's sentencing hearing was conducted the following week and she was sentenced to a term of imprisonment of 238 months.

On October 22, 2012, Seeley filed a timely motion to vacate her sentence pursuant to 28 U.S.C. § 2255, alleging that her trial counsel was ineffective. After additional briefing and appointment of new counsel, the District Court held a hearing. The District Court denied Seeley's § 2255 motion, and declined Seeley's request for issuance of a certificate of appealability.

Seeley filed a timely notice of appeal, followed soon after by an application seeking a certificate of appealability. This Court granted Seeley's certificate of appealability regarding the two issues now before us: 1) whether trial counsel rendered ineffective assistance in connection with Seeley's mental competence during plea bargaining, before trial, and before sentencing; and 2) whether the District Court erred by not holding a competency hearing *sua sponte* before sentencing.

## II. Jurisdiction and Standard of Review

The District Court had jurisdiction under 28 U.S.C. § 2255. We have jurisdiction pursuant to 28 U.S.C. §§ 1291 and 2253. "In a federal habeas corpus proceeding, we exercise plenary review of the district court's legal conclusions and apply a clearly erroneous standard to the court's factual findings." *United States v. Lilly*, 536 F.3d 190, 195 (3d Cir. 2008).

## III. Analysis

Seeley argues that her trial counsel and the District Court failed to observe the necessary procedural safeguards to ensure that she was competent during each stage of the criminal case against her.

*Ineffective Assistance of Counsel*

Seeley offers two reasons why Ulrich's counsel was ineffective. First, she argues that her trial counsel should have requested that the District Court hold a competency hearing. Second, she argues that Ulrich was ineffective in that she only discussed the government's plea offer with her during a period of undisputed incompetency. Seeley

6

contends that since her mental health has improved, she would have accepted the plea agreement, thereby altering the outcome of her case.

A prisoner in federal custody may move to vacate a sentence if it "was imposed in violation of the Constitution or laws of the United States[.]" 28 U.S.C. § 2255(a). A prisoner seeking relief on the grounds of ineffective assistance of counsel bears the burden to demonstrate two requirements. "First, the defendant must show that counsel's performance was deficient." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Second, "the defendant must show that the deficient performance prejudiced the defense." *Id.* In this regard, the defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694.

We have "endorsed the practical suggestion in *Strickland* [that we may] consider the prejudice prong before examining the performance of counsel prong because this course of action is less burdensome to defense counsel." *Lilly*, 536 F.3d at 196 (alteration in original) (internal quotation marks and citation omitted). Finding that approach appropriate here, we conclude that Seeley fails to demonstrate the requisite prejudice entitling her to relief. To that end, her claim may be resolved on this ground without deciding whether counsel's performance was constitutionally deficient.[1]

---

[1] While our analysis does not require it, it is worth noting that counsel's performance was suspect in one respect: presenting a plea agreement to one's client, knowing that a professional doctor retained by counsel had just declared Seeley to be

7

Seeley states that Ulrich, "rather than filing a motion requesting a competency evaluation," "arranged for a private evaluation" instead. Appellant's Br. 15. This decision, according to Seeley, was antithetical to procedural safeguards and not strategic.

Ulrich was aware of Seeley's mental health issues. As noted above, such concerns prompted Ulrich to arrange for Seeley to receive a private competency evaluation by Dr. Compton. While Dr. Compton did find Seeley to be incompetent, she informed Ulrich that Seeley's competency could be restored with proper medication in as little as four weeks. This initial examination finding Seeley to be incompetent to stand trial, also found that Seeley was able to understand the charges against her, the potential consequences of the criminal proceedings, and the adversarial nature of those proceedings as well as the average person. This indicates that, while there were intermittent communication issues, even while Seeley was deemed incompetent, she was still able to assist in her defense.

Prior to trial, Ulrich confirmed that Seeley's competence was, in fact, restored, by having Seeley participate in a follow-up examination with Dr. Compton. The follow-up examination revealed that Seeley had been competent for the two months leading up to the trial and throughout the trial proceedings. Based upon this second evaluation, we agree with the District Court that "there would have been no cause for defense counsel to have requested an incompetency hearing prior to trial." App. 6. As a result, Seeley's

incompetent, is questionable. However, for the reasons discussed *infra*, Seeley was not prejudiced by such conduct.

8

constitutional rights were adequately protected, and Ulrich's decision not to request a competency hearing did not infringe those rights.

*Jermyn v. Horn* is instructive in determining whether any rights were impinged. 266 F.3d 257, 302 (3d Cir. 2001). In that case, we concluded that counsel was not ineffective for failing to seek a competency hearing for his paranoid schizophrenic client, despite the fact that he had been evaluated for incompetency by prior counsel. Similarly, we find that Ulrich was not ineffective for failing to seek a competency hearing for Seeley from the District Court, in spite of her knowledge that Seeley had been found to be incompetent in June 2011.

In addition, Seeley's competency was restored, as confirmed by Dr. Compton, in September 2011. Because she was competent during her trial (November 2011), and during the months leading up to trial, she cannot demonstrate the requisite prejudice prong of *Strickland* to mandate the grant of the relief she seeks. The failure to request a second competency hearing prior to her sentencing is not violative of *Strickland*.

Seeley's next contention is that she was completely incompetent during the discussions between herself and Ulrich regarding the plea offer. Specifically, she claims that she does not recall the discussions at all. She claims that, had she been competent, she would have accepted the government's plea offer.

Seeley was offered two plea agreements: one in or about May 2010 when she was represented by counsel other than Ulrich, and then the July 2011 plea offer at issue here. Seeley signed the first plea agreement; however, she orally declined to plead at the guilty

plea hearing.  As Ulrich professed, Seeley consistently proclaimed her innocence and ultimately expressed no interest in pleading guilty.

Even given Seeley's incompetency during the time of the plea discussion, Seeley cannot meet the second prong of *Strickland*.  To demonstrate prejudice in the context of a rejected plea offer, a defendant must show that, "but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (*i.e.*, that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed." *Lafler v. Cooper*, 132 S. Ct. 1376, 1385 (2012).

Ulrich testified that, throughout her dealings with her client, Seeley never gave her any indication that she was interested in cooperating with the government or pleading guilty.  Seeley maintained a steadfast insistence that she was innocent.  Seeley fails to establish that, but for her mental state, she would have accepted the government's July 2011 plea offer.

### District Court's Obligation to Hold a Sua Sponte Competency Hearing

Seeley next argues that once the District Court became aware of Seeley's history of mental illness and Dr. Compton's competency evaluations, it had an obligation to hold a competency hearing *sua sponte* prior to sentencing, and erred by failing to do so.

Indubitably, Seeley has a due process right not to be tried while incompetent.

*Drope v. Missouri*, 420 U.S. 162, 171-72 (1975) (noting that the prohibition against trying a person who lacks the capacity to understand the nature and object of proceedings against him is "fundamental to an adversary system of justice").[2] In order to be competent to stand trial, a defendant must understand the proceedings against her, and be able to cooperate with her counsel in the defense. *Cooper v. Oklahoma*, 517 U.S. 348, 354 (1996).

When determining whether a district court properly applied the standard for determining the necessity of a competency hearing, our review is plenary. *United States v. Renfroe*, 825 F.2d 763, 766 (3d Cir. 1987).

A criminal defendant whose competency is in question may be subjected to a competency hearing. 18 U.S.C. § 4241(a). If neither the defendant nor the government moves for a competency hearing, a trial court may do so on its own motion. *Id.* "[T]he trial court must have 'reasonable cause' to believe that the defendant is 'presently' suffering from an impairment resulting in mental incompetency." *United States v. Leggett*, 162 F.3d 237, 241 (3d Cir. 1998) (citations omitted). A court must look at the unique circumstances of the case and decide whether the defendant "(1) has the capacity to assist in her or his own defense and (2) comprehends the nature and possible consequences of a trial." *United States v. Jones*, 336 F.3d 245, 256 (3d Cir. 2003)

---

[2] "It is clear that the conviction of a legally incompetent defendant and the failure to provide adequate procedures to determine competence would violate a defendant's constitutional right to a fair trial." *United States v. Renfroe*, 825 F.2d 763, 765-66 (3d Cir. 1987).

11

(internal quotation marks omitted). "[E]vidence of a defendant's irrational behavior, his demeanor at trial, and any prior medical opinion on competence to stand trial are all relevant in determining whether further inquiry is required . . . ." *Drope*, 420 U.S. at 180.

The District Court, at the time it was made aware of Seeley's past and finite period of incompetence, had no reasonable cause to believe that Seeley was presently suffering from an impairment resulting in mental illness.

Upon careful review of the record, it is apparent that the District Court observed Seeley's demeanor and her assistance to counsel during the trial, and noted that her responses to questions and conduct demonstrated her awareness. Even Seeley's June 2012 letter to the Court, which explained her mental illness and requested the withdrawal of Ulrich as counsel, evidenced a clear understanding of the nature of the proceedings, her role in the proceedings, and the role of the other participants. The District Court also observed Seeley's demeanor during the *ex parte* hearing regarding whether Ulrich was effective or not as Seeley's counsel, and saw no reason to be concerned regarding Seeley's competence.

The District Court specifically addressed Seeley's complaint regarding Ulrich's failure to report Dr. Compton's initial incompetence finding. The District Court found that Ulrich had acted in Seeley's best interest in working to ensure that she was found competent to stand trial, while simultaneously protecting her interest in not being remanded to the custody of the Bureau of Prisons. Moreover, Seeley was, in fact, found to be competent to stand trial two months before the trial began.

12

During the July 2012 hearing, the District Court relied upon the testimony of Ulrich, to find that, while occasionally noncommunicative, Seeley did exhibit an overall ability to understand the proceedings and to assist in her defense. By this time, the District Court was also aware of Dr. Compton's finding that Seeley's competency had been restored through proper treatment. The District Court also took judicial notice of the complexity and scale of the scheme, which required "mental acuity." App. 8. This allowed the District Court to conclude that Seeley was competent prior to trial and sentencing. Furthermore, the testimony of Dr. Compton during Seeley's sentencing itself established that, even suffering from Bipolar disorder, Seeley could go through periods of relative stability even before her medication was properly adjusted.

Given the circumstances of this case, the District Court had no "reasonable cause" to believe that Seeley was "presently" suffering from an impairment resulting in mental incompetency at the time of her sentencing. *Leggett*, 162 F.3d at 241. We decline to find that the District Court erred by failing to *sua sponte* order a competency hearing at the time of Seeley's sentencing.

## IV. Conclusion

For the foregoing reasons, we will affirm the order of the District Court.