**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 23-2059

———————

STEVEN L. BAKER,

Appellant

v.

UNITED STATES OF AMERICA

———————

Appeal from the United States District Court
for the District of New Jersey
(District Court No. 3-14-cv-00370)
U.S. District Judge:  Honorable Peter G. Sheridan

———————

Argued May 1, 2024


Before:  KRAUSE, CHUNG, and AMBRO, <u>Circuit Judges</u>


(Opinion filed: July 25, 2024)

Alison Brill, Esq. **(Argued)**
Office of Federal Public Defender
800-840 Cooper Street
Suite 350
Camden, NJ 08102

                Counsel for Appellant

Sabrina G. Comizzoli, Esq. **(Argued)**
Mark E. Coyne, Esq.
Steven G. Sanders, Esq.
Office of United States Attorney
970 Broad Street
Room 700
Newark, NJ 07102

                Counsel for Appellee

---

OPINION OF THE COURT

---

AMBRO, <u>Circuit Judge</u>

Following a robbery of the First Atlantic Federal Credit Union in Neptune, New Jersey on January 13, 2010, federal prosecutors charged Steven Baker with bank robbery and using a firearm during the robbery, the latter in violation of 18 U.S.C. § 924(c). They offered Baker a plea agreement, under which he would plead guilty to those two charges and also admit to, but not be charged with, the commission of two other bank robberies while using a firearm.

It was here the problems at the heart of this appeal began. Baker's counsel advised him that he faced a total of 15-17 years' imprisonment if he accepted the plea and that, if he did not accept it, the Government would also charge him in connection with the two other armed bank robberies. As to the three potential Section 924(c) counts, his counsel told him that he faced a consecutive term of 21 years' imprisonment. In fact, he faced a consecutive 57-year *mandatory minimum* sentence under the statute's "stacking" provision then in effect. After receiving this highly inaccurate advice, Baker turned down the plea, was charged in connection with the other robberies, and proceeded to trial, where he was convicted on all counts. His sentence was 57 years on the Section 924(c) counts plus 87 months on the bank robbery charges.

Baker filed a direct appeal, and we affirmed the judgment and sentence. *United States v. Baker*, 496 F. App'x 201, 206 (3d Cir. 2012), *cert. denied*, 568 U.S. 1148 (2013). He then filed a Section 2255 federal habeas motion, arguing that his counsel was constitutionally ineffective for severely miscalculating his sentence exposure as he weighed the plea offer. 28 U.S.C. § 2255. The District Court denied relief, determining Baker could not show prejudice.

Considering the significant disparity in Baker's comparative sentence exposure between accepting the plea offer and going to trial and crediting his testimony that he would have accepted the plea agreement but for his counsel's error, we conclude that Baker has demonstrated prejudice. Thus, we reverse and remand.

# I. Background

## A. Plea Offer and Trial

The initial charges against Baker included two counts: (1) bank robbery by force and violence, in violation of 18 U.S.C. §§ 2113(a) and 2; and (2) using or carrying a firearm in furtherance of the robbery, in violation of 18 U.S.C. § 924(c). Baker hired an attorney to represent him, who remained his counsel through his direct appeal.

On February 17, 2010, the Government offered Baker a plea agreement. If accepted, Baker would plead guilty to the two counts above (although the initial bank robbery charge would be upgraded to *armed* bank robbery, in violation of 18 U.S.C. § 2113(a), (d)) and also admit to committing two other bank robberies: one on September 24, 2009, of the Investors Savings Bank in Lakewood, New Jersey, and another on November 9, 2009, of the PNC Bank in Brick, New Jersey. In exchange, the Government would not bring additional charges against Baker in connection with the two earlier robberies. The agreement was set to expire on March 17, 2010, a month later.

Baker met with his counsel to discuss the plea offer on March 21, 2010—four days *after* its original expiration date— at the Monmouth County Correctional Institution. Surprisingly, there is nothing in the record bearing on whether the Government extended the initial deadline. Nonetheless, both parties assume that the offer remained open for Baker to accept when he met with his counsel.

Baker's counsel told him that if he accepted the agreement, his sentence exposure on the two counts would be 15-17 years (8-10 years for the bank robbery charge and a

4

mandatory consecutive 7 years for the Section 924(c) charge). She also advised him that if he rejected the plea offer, he would be charged in connection with the two earlier bank robberies, *i.e.*, with two additional counts of armed bank robbery under 18 U.S.C. § 2113(a), (d) and two more firearm counts under Section 924(c), resulting in six counts total.

His counsel then advised him on his sentence exposure on the six potential counts were he to reject the plea agreement and go to trial. For the bank robbery charges, it is unclear precisely what she told him. Baker testified that he understood he could receive 10-30 years for the three counts. But his counsel's handwritten notes from the plea discussion suggest she told him he faced 15-35 years on those counts.[1]

For the three potential Section 924(c) counts, Baker's counsel told him he faced 21 years, 7 years for each count. This is reflected in her notes from the meeting, where she wrote "7-7-7" next to the 21-year figure added to his total sentence exposure—numbers that are inexplicable if not referring to the

---

[1] As Baker observes, neither the 10-30 nor the 15-35 year estimate for the bank robbery charges accords precisely with the statute or U.S. Sentencing Guidelines at the time. The armed bank robbery statute carries a maximum 25-year term. 18 U.S.C. § 2113(a), (d). Under the Guidelines, the three bank robberies had a combined adjusted offense level of 27, which, in combination with a criminal history category of III, resulted in a Guidelines range of 87-108 months (7 ¼ to 9 years). *See* U.S.S.G. ch. 5., pt. A (Sentencing Table).

5

potential Section 924(c) charges. App. 176. Baker understood the 21-year total for those counts to be a maximum.[2]

His counsel's notes then summed up Baker's sentence exposure, calculating he faced a total term of imprisonment of 36-56 years if he were convicted of the six potential counts: 21 years for the Section 924(c) charges and 15-35 years on the bank robbery charges. But in light of Baker's testimony that he was told he faced 10-30 years for the bank robbery counts, the District Court gave him the benefit of the doubt and assumed instead that he was told the sentencing range was 31-51 years for all six counts. Baker also testified that he believed his chances of receiving the maximum sentence within that range—51 years—were "slim to none" based on conversations with his counsel. App. 93.

Altogether, then, his counsel told him he faced 15-17 years if he accepted the plea offer and either 31-51 or 36-56 years if he rejected the plea agreement and was convicted of all the potential counts at trial.

This calculation, however, substantially understated the amount of time Baker faced on the three Section 924(c) counts. He actually faced a 57-year mandatory minimum under the version of the statute then in force. This resulted from the "stacking" provision under Section 924(c), which provides a 7-year mandatory minimum for brandishing a firearm while

---

[2] Baker's counsel also appears not to have told him that he faced a potential maximum of life imprisonment on the Section 924(c) charge, although the Government mentioned this at his arraignment. *See United States v. Shabazz*, 564 F.3d 280, 289 (3d Cir. 2009).

committing a crime of violence (here, the bank robberies), 18 U.S.C. § 924(c)(1)(A)(ii), and, at the time, provided a 25-year mandatory minimum term of imprisonment "[i]n the case of a second or subsequent conviction," 18 U.S.C. § 924(c)(1)(C) (prior to the 2018 amendment). The term "second or subsequent conviction" was interpreted to include instances where a defendant was convicted of multiple counts in the same indictment, as occurred with Baker. *See Deal v. United States*, 508 U.S. 129, 132–37 (1993). Under this prior "stacking" provision, Baker thus faced one 7-year plus two 25-year mandatory minimum terms of imprisonment.

Congress then amended the statute as part of the First Step Act of 2018, Pub. L. No. 115–391, § 403(a), 132 Stat. 5194, 5221–22, which clarified that the "stacking" 25-year mandatory minimum term for a subsequent conviction *only* applies when a violation of that section—*i.e.*, using or carrying a firearm during the commission of a violent felony—"occurs after a prior conviction . . . has become final." 18 U.S.C. § 924(c)(1)(C) (as amended in 2018).[3]

---

[3] Under the current version of the statute, Baker, who was convicted on three Section 924(c) counts simultaneously, would not be subject to the stacking 25-year terms for the second and third bank robberies but would instead face a 7-year mandatory minimum for each, resulting in a 21-year mandatory minimum for all three counts. *See* 18 U.S.C. § 924(c)(1)(C) (as amended in 2018). But Congress withheld retroactive application of the amendment from defendants whose convictions were already final, as Baker's was. First Step Act of 2018, § 403(b), 132 Stat. at 5222; *see also United States v. Hodge*, 948 F.3d 160, 161–63 & n.2 (3d Cir. 2020).

Relying on his counsel's miscalculation and without the benefit of knowing his true sentence exposure, Baker rejected the plea offer. The Government then filed a superseding indictment, adding two counts of armed bank robbery and two Section 924(c) counts.[4] Baker pleaded not guilty and proceeded to trial, where the jury found him guilty of all counts. He testified that he only learned that the three Section 924(c) counts carried a mandatory minimum of 57 years after he read over his presentence investigation report.

The District Court sentenced Baker to the 57-year mandatory minimum for the Section 924(c) counts to be served consecutively to 87 months for the bank robbery counts, the latter being at the lowest end of the U.S. Sentencing Guidelines range of 87-108 months applicable to a total offense level of 27 and a criminal history category of III. U.S.S.G. ch. 5, pt. A. It also imposed supervised release of 5-year terms for each count, to be served concurrently, and restitution in the amount of $145,111.00. Baker was 40 years old at the time of sentencing. He represents in his briefing that, with his good time credit, he is required to serve at least 55 years total, meaning he will be in prison until he is roughly 95. Baker filed a direct appeal, and we affirmed the judgment and sentence. *Baker*, 496 F. App'x 201.[5]

---

[4] At the arraignment, Baker was not advised of the stacking mandatory minimums under the Section 924(c) counts.

[5] In light of the First Step Act's amendment to the "stacking" provision in Section 924(c), First Step Act of 2018, § 403(a), 132 Stat. at 5221–22, Baker has also moved for a modification to his sentence under 18 U.S.C. § 3582(c) and U.S.S.G. § 1B1.13(b)(6) in his criminal proceedings. *United States v.*

## B. Federal Habeas Proceedings

In January 2014, Baker filed *pro se* a motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. In this initial motion, he made numerous claims of ineffective assistance of counsel but not the one directly at issue here concerning his sentence exposure on the Section 924(c) counts. One claim alleged that Baker's counsel did not inform him of a separate plea deal he believed the Government had offered, which, in his understanding, would have required him to plead guilty to one count of criminal possession of stolen property in exchange for the dismissal of the bank robbery charges. Baker claimed that his counsel rejected the offer without first relaying it to him.

In June 2016, Baker moved to amend his Section 2255 motion and for appointment of counsel, both of which the District Court granted. The amended (and counseled) Section 2255 motion added another ineffective-assistance-of-counsel claim, alleging that Baker's counsel did not advise him correctly as to his criminal history category while he considered the Government's plea agreement. Specifically, he alleged that his counsel told him he faced a criminal history category of IV when in fact it was III. The District Court denied the amended Section 2255 motion in part but determined that an evidentiary hearing was required for Baker's ineffective-assistance claims related to the separate plea offer (*i.e.*, for criminal possession of stolen property) and the calculation of his criminal history category.

---

*Baker*, No. 3:10-cr-00266-PGS-1 (D.N.J. Nov. 3, 2023) (ECF No. 83). The District Court has yet to rule on that motion.

A new federal public defender then entered an appearance for Baker and filed a letter with the Court notifying it that an additional issue of ineffective assistance had come to light, namely that his plea counsel had advised him incorrectly on the "stacking" provision under 18 U.S.C. § 924(c)—the claim at issue here. The Government opposed this new claim, arguing that it was time-barred.

Following an evidentiary hearing on July 1, 2021, during which the District Court heard Baker and his plea counsel's testimony as well as admitted into evidence his counsel's handwritten notes from their plea discussion, the Court denied all of Baker's remaining claims of ineffective assistance of counsel. Regarding the separate plea offer, the Court concluded that, besides Baker's testimony, there was nothing substantiating his claim that the Government had offered a second plea agreement related to criminal possession of stolen property. Additionally, his counsel and the Assistant U.S. Attorney on the case declared that the Government had never made such an offer. Rather, Baker's counsel testified that she had proposed a resolution involving a plea to charges for "possession of stolen property" but that the proposal "was rejected," meaning the Government never offered a formal plea based on "criminal possession of stolen property." App. 106, 109.

For the ineffective-assistance claim predicated on the alleged miscalculation of Baker's criminal history category, the Court concluded that, regardless of which category his counsel had said applied, she had advised him correctly on his sentence exposure if he took the Government's offer to plead guilty to one count of bank robbery and one Section 924(c) firearm count by stating he faced 15-17 years' imprisonment.

As the Court concluded, the advised 8-10 year range for the bank robbery count reflected the 97-121 month range provided by the U.S. Sentencing Guidelines for a criminal history category of III (the correct category) in conjunction with a total offense level of 28, as stipulated in the plea offer.

Regarding the claim before us—concerning the sentence exposure for the three potential Section 924(c) counts—the Court first determined it was timely.[6]  Turning to the merits, it found that Baker's counsel "incorrectly advised [him] about the stacking provisions of § 924(c) and did not tell [him] he faced a mandatory minimum sentence of fifty-seven years['] imprisonment if he went to trial and was convicted on all three . . . charges," instead telling him he faced only 21 years on those charges.  *Baker v. United States*, No. 14-370, 2023 WL 2889483, at *14 (D.N.J. Apr. 11, 2023).

It then turned to whether this miscalculation meant that his counsel had provided constitutionally ineffective assistance.  *See Strickland v. Washington*, 466 U.S. 668 (1984). The Court assumed, without deciding, that his counsel's performance fell below an objective standard of reasonableness, but it went on to conclude that Baker had nonetheless failed to demonstrate prejudice, *i.e.*, "to show . . . a reasonable probability that he would have accepted the government's plea offer of fifteen-seventeen years['] imprisonment had [his counsel] properly advised him about his sentencing exposure on the three § 924(c) counts at trial." *Baker*, 2023 WL 2889483, at *14; *see Strickland*, 466 U.S. at 688, 694.  As discussed at length below, the Court relied on

---

[6] The Government does not renew its timeliness challenge on appeal.  Tr. of Oral Arg. at 23.

Baker's assertions of innocence in the proceedings following his rejection of the plea offer as well as its determination that he was not credible in stating he would have accepted the plea offer but for his counsel's error.

Having concluded that Baker did not show prejudice, the Court denied his ineffective-assistance claim predicated on the miscalculation of his sentence exposure on the Section 924(c) counts, but it nonetheless issued a certificate of appealability on that claim. Baker appeals.

## II. Discussion

The District Court had jurisdiction under 28 U.S.C. § 2255. We have appellate jurisdiction under 18 U.S.C. § 3742 and 28 U.S.C. §§ 1291, 2253(c)(1)(B). We review the Court's denial of Baker's Section 2255 motion *de novo* with respect to legal conclusions and for clear error as to its factual findings. *Lambert v. Blackwell*, 134 F.3d 506, 512 (3d Cir. 1997).

The single issue before us is whether Baker's plea counsel was constitutionally ineffective when she provided him with inaccurate advice regarding his sentence exposure for the three potential Section 924(c) firearm charges as he considered the plea offer.

"The Sixth Amendment . . . provides that the accused shall have the assistance of counsel in all criminal prosecutions. The right to counsel is the right to effective assistance of counsel." *Missouri v. Frye*, 566 U.S. 134, 138 (2012). This right extends to the plea-bargaining stage of a criminal prosecution. *Lafler v. Cooper*, 566 U.S. 156, 162 (2012); *see Frye*, 566 U.S. at 144; *Hill v. Lockhart*, 474 U.S.

12

52, 57 (1985).  This is appropriate given the "simple reality" that the plea process plays a substantial and often determinative role in criminal proceedings.  *Frye*, 566 U.S. at 143; *see also Lafler*, 566 U.S. at 170 ("[C]riminal justice today is for the most part a system of pleas, not a system of trials.").

To demonstrate ineffective assistance, Baker must show his counsel's performance was deficient, *i.e.*, that it fell below an "objective standard of reasonableness," and that he was prejudiced by that deficiency.  *Strickland*, 466 U.S. at 688–92.  To establish prejudice, a defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," *id.* at 694, meaning here Baker must show "that but for [his] counsel's errors he would have accepted the plea." *Lafler*, 566 U.S. at 171.[7]  "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

"When addressing a guilty plea, counsel is required to give a defendant enough information 'to make a reasonably informed decision whether to accept a plea offer.'"  *United States v. Bui*, 795 F.3d 363, 367 (3d Cir. 2015) (quoting *Shotts v. Wetzel*, 724 F.3d 364, 376 (3d Cir. 2013)); *see also United States v. Day*, 969 F.2d 39, 43 (3d Cir. 1992) ("[A] defendant has the right to make a reasonably informed decision whether to accept a plea offer.").

---

[7] The parties do not contest on appeal that the terms of the plea offer would have been accepted by the District Court if Baker had agreed to it.  Tr. of Oral Arg. at 9, 23; *see Lafler*, 566 U.S. at 164.

13

## A. *Strickland*: Reasonableness of Counsel's Performance

There is no dispute that Baker's counsel gave him incorrect advice about his sentence exposure on the three potential Section 924(c) counts. Whereas he faced a 57-year mandatory minimum on those counts, his counsel told him he only faced 21 years—7 years for each count. Moreover, Baker understood the 21-year figure to reflect the counts' *maximum* total sentence.[8]

We have little difficulty concluding that this more than three-decade miscalculation of Baker's sentence exposure on the three potential Section 924(c) counts is objectively unreasonable, as the Government conceded at oral argument. Tr. of Oral Arg. at 22. "Knowledge of the comparative sentence exposure between standing trial and accepting a plea offer will often be crucial to the decision whether to plead guilty." *Day*, 969 F.2d at 43. The law governing the "stacking" provision under Section 924(c), which imposed the 57-year mandatory minimum, was established and longstanding at the time of the error. *See Deal*, 508 U.S. at 132–37. At base, Baker's counsel violated her duty to inform him adequately of his potential sentence exposure so he could be "reasonably informed" as he considered the plea agreement. *Shotts*, 724 F.3d at 376 (quoting *Day*, 969 F.2d at 43); *see also*

---

[8] The District Court only found that Baker's counsel told him he faced 21 years on the three Section 924(c) counts, and it did not address whether she told him this figure represented a mandatory minimum. Baker testified, however, that he understood the figure to represent the maximum possible sentence he faced on those counts.

14

*Hinton v. Alabama*, 571 U.S. 263, 274 (2014) ("An attorney's ignorance of a point of law that is fundamental to his case combined with his failure to perform basic research on that point is a quintessential example of unreasonable performance under *Strickland*."). His counsel's performance was thus objectively unreasonable.

## B.  *Strickland*: **Prejudice**

We turn then to whether Baker suffered prejudice from the error sufficient to satisfy *Strickland*'s second prong. To repeat, this requires only that Baker demonstrate a "reasonable probability" that, but for his counsel's error, he would have accepted the plea. *Lafler*, 566 U.S. at 171.

The District Court concluded he did not. Its decision rested on two grounds: (1) its finding that Baker was not credible in stating he would have accepted the plea agreement but for his counsel's error; and (2) his insistence on his own innocence during his criminal proceedings, especially at sentencing. As explained below, we find the Court's decision not to credit Baker's testimony that he would have accepted the plea clearly erroneous, and we do not think that Baker's insistence on innocence in the proceedings following his rejection of the plea offer deserves much, if any, weight in our prejudice analysis.

More importantly, the District Court's focus on these two issues obscured the most significant factor bearing on prejudice in this case: the substantial disparity between Baker's sentence exposure under the plea and actual sentence as well

as his counsel's glaring miscalculation as to his actual sentence exposure.  To this we turn first.[9]

### i. Disparity in Comparative Sentence Exposure

Disparities in a defendant's comparative sentence exposure between the actual sentence faced and a more favorable sentence he could have received if his counsel had been effective are an important factor in the reasonable-probability inquiry where a defendant claims he would have accepted a plea but for his counsel's error.  *See, e.g.*, *Mask v. McGinnis*, 233 F.3d 132, 141–42 (2d Cir. 2000); *United States v. Herrera*, 412 F.3d 577, 581 (5th Cir. 2005); *United States v. Morris*, 470 F.3d 596, 602–03 (6th Cir. 2006); *United States v. Kearn*, 90 F.4th 1301, 1312 (10th Cir. 2024); *United States v. Knight*, 981 F.3d 1095, 1103 (D.C. Cir. 2020); *see also Day*, 969 F.2d at 45–47 (stating a disparity between a miscalculated sentence exposure and actual sentence could support a reasonable probability the defendant would have taken a plea but for counsel's error and remanding for further record development).  In combination with a defendant's statement that he would have accepted a plea agreement but for his counsel's error, significant disparities in sentence exposure can be sufficient to establish a reasonable probability the defendant would have made an agreement.  *See, e.g.*, *Mask*, 233 F.3d at 141; *Pham v. United States*, 317 F.3d 178, 182 (2d Cir. 2003); *Griffin v. United States*, 330 F.3d 733, 737–38 (6th Cir. 2003).

This treatment of sentence-exposure disparities makes

---

[9] We note at the outset that there was no cure of his counsel's error before Baker rejected the plea.  *Cf. Bui*, 795 F.3d at 367.

16

good sense. It offers an objective piece of evidence in an inherently speculative inquiry that requires us to imagine a counterfactual scenario in which a defendant possessed information relevant to his plea calculus that he did not actually have due to an error by counsel. *See United States v. Gordon*, 156 F.3d 376, 381 (2d Cir. 1998) ("[A great] disparity provides sufficient objective evidence—when combined with a [defendant's] statement concerning his intentions—to support a finding of prejudice under *Strickland*.").[10] Moreover, while a defendant's calculus in accepting or rejecting a plea offer may involve many variables, "[k]nowledge of the comparative sentence exposure between standing trial and accepting a plea offer will often be crucial." *Day*, 969 F.2d at 43. Large sentence-exposure disparities weigh directly on this "crucial"

_____

[10] Some courts have required objective evidence, *i.e.*, evidence besides a defendant's statement that he would have made a different decision regarding a plea but for his counsel's error, to demonstrate prejudice. *See, e.g.*, *Paters v. United States*, 159 F.3d 1043, 1047 (7th Cir. 1998); *Gordon*, 156 F.3d at 381 (stating the Seventh Circuit's "objective evidence" rule is consistent with Second Circuit precedent but finding such evidence was provided by a sentence disparity). We have not formally adopted the rule. *See Day*, 969 F.2d at 45 (acknowledging the rule but determining it was not necessary to adopt it because more factual development was required on remand anyway); *United States v. Jones*, 336 F.3d 245, 254 (3d Cir. 2003) (affirming the district court, which referred to the rule, without expressly adopting it). We need not decide whether to adopt the rule here because, in any case, Baker's gaping sentence-exposure disparity provides sufficient objective evidence. *See, e.g.*, *Mask*, 233 F.3d at 141; *Griffin*, 330 F.3d at 739.

decision. *See Morris*, 470 F.3d at 602 (giving "special weight to significant disparities between penalties offered in a plea and penalties of a potential sentence in determining whether a defendant suffered prejudice by not accepting a plea offer"); *Smith v. United States*, 348 F.3d 545, 552 (6th Cir. 2003) (considering sentence disparities as "strong evidence of a reasonable probability that a properly advised defendant would have accepted a guilty plea offer").[11]

Here, Baker could have pleaded guilty to two charges (one count for bank robbery and one for violating Section 924(c)), which, as his counsel advised, would have exposed him to 15-17 years' imprisonment. But because he rejected the plea offer, he was charged with four more counts (two for armed bank robbery and two additional Section 924(c) counts).[12] He was then convicted of all six counts and sentenced to the mandatory 57 years for the Section 924(c) counts to run consecutively to 87 months for the bank robbery counts.

Unfortunately, he did not understand the full scope of

---

[11] At least one court has even applied a rebuttable "presumption of prejudice" where there is a significant disparity between the plea offered and the sentence received where a defendant's counsel failed to advise him accurately about the comparative sentence exposure. *See Johnson v. Genovese*, 924 F.3d 929, 940 (6th Cir. 2019) (quoting *Sawaf v. United States*, 570 F. App'x 544, 548 (6th Cir. 2014)). We do not adopt any *per se* or presumption-of-prejudice rule here but instead treat the disparity in Baker's case as one factor to consider in our reasonable-probability prejudice analysis.

[12] Additionally, the initial bank robbery charge was upgraded to armed bank robbery, in violation of 18 U.S.C. § 2113(a), (d).

the disparity between his sentence exposure under the plea (15-17 years total) and on all counts at trial (57 years minimum plus a likely 87-108 months) because his counsel significantly miscalculated his exposure on the Section 924(c) counts, telling him he faced 21 years instead of the 57-year mandatory minimum. If we view the evidence in his favor, Baker understood he could receive at most 31-51 years if convicted of all potential counts. A mandatory 57-year minimum sentence, running consecutively to a likely 87-108 month sentence, is much greater than the 51-year maximum Baker believed there was a "slim to none" chance he could receive, not to mention the 31 years he was told to expect as the lowest end of his sentencing range. App. 93. Even if we were to assume that his counsel told him he faced 36-56 years total (rather than 31-51), that range is still significantly lower than a consecutive and mandatory 57-year minimum plus a likely 87-108 months. Baker's actual sentencing range was also extraordinarily greater than the 15-17 years he would have received had he accepted the plea offer. Further, as Baker states, the 57-year mandatory minimum alone would almost certainly mean that he would "die in prison." Reply Br. at 7.

This great sentence-exposure disparity, the true scope of which Baker did not know due to his counsel's underestimate of the sentence for the potential firearm charges, weighs heavily in favor of prejudice. *See Morris*, 470 F.3d at 603 ("Because [the defendant] . . . relied on the erroneous information, he suffered prejudice and his ability to make an intelligent decision regarding a plea offer [was] severely undermined." (internal quotation marks and citation omitted)). Further contributing to prejudice is the fact that the plea would have required him to plead guilty only to two counts (one bank robbery and one Section 924(c) count), whereas, after rejecting

19

the plea, he was charged with and convicted of six counts in connection with all three bank robberies. Moreover, his two additional Section 924(c) counts carried significantly higher penalties due to their "stacking" 25-year mandatory minimum sentences. *See Lafler*, 566 U.S. at 166 ("[T]he defendant who goes to trial instead of taking a more favorable plea may be prejudiced from either a conviction on more serious counts or the imposition of a more severe sentence.").[13]

### ii. Baker's Credibility

Testifying to the significance of this sentence-exposure disparity, Baker stated that he would have "accepted the plea agreement had [he] known that [he] was facing 57 years alone just for [the Section 924(c)] charges." App. 74. But the District Court did not credit this testimony for two reasons. First, Baker contradicted himself regarding his guilt between statements made in his initial *pro se* Section 2255 motion and his testimony at the federal habeas evidentiary hearing. Second, while discussing his separate ineffective-assistance claim at the hearing, Baker stated that he would have accepted a plea offer with a sentence range lower than 15-17 years because it would "allow [him] to at least be home to see [his] kids graduate from high school." App. 73. But neither reason weighs strongly against the probability that he would have

accepted the plea, nor does either come close to countervailing

---

[13] While the fact that the 57 years' imprisonment for the Section 924(c) counts is a mandatory minimum contributes to the significance of the disparity in this case, we do not propose any bright-line rule that privileges mandatory minimums as a point of comparison in the prejudice analysis.

the prejudicial effect of the large sentence-exposure disparity.

The contradiction noted by the Court occurred during the course of Baker's federal habeas proceedings: Baker stated in his initial and *pro se* Section 2255 motion that "[d]uring the course of criminal proceedings, [he] made his counsel aware that [t]he only possible inappropriateness [he] 'may' have been involved with was misdemeanor possession of stolen property." *Baker*, 2023 WL 2889483, at *16 (quoting D. Ct. Dkt. No. 1-2 at 8). On the other hand, at the evidentiary hearing on his Section 2255 motion, Baker testified that he "told [his counsel] about the crimes" and "admit[ted] [his] guilt" to her, telling her he was "guilty of the charges." App. 69. His counsel corroborated this, testifying at the evidentiary hearing that Baker told her he was guilty of the charges. The District Court nonetheless concluded that this flip-flop concerning his guilt weighed negatively on Baker's "overall credibility." *Baker*, 2023 WL 2889483, at *16.

Even if this contradiction concerning his guilt undermines Baker's general credibility to some degree, it does not weigh heavily against the likelihood he would have pleaded guilty pursuant to the plea agreement but for his counsel's error. Indeed, the fact that Baker was willing to admit his guilt to his counsel before trial (as his counsel confirmed) tends, if anything, to support the existence of a reasonable probability that he would have been willing to plead guilty in order to accept the Government's plea offer. In any event, these inconsistent statements do not outweigh the prejudice of the significant sentence-exposure disparity resulting from his counsel's error and its likely effect on his plea calculus.

Nor does Baker's statement that he would have

21

accepted a lower sentencing range under a plea agreement in order to see his children graduate from high school weigh strongly against the probability he would have taken the plea. Baker made this remark during a course of questioning about his separate ineffective-assistance-of-counsel claim based on the alleged miscalculation of his criminal history category:

> Q. What would you have done with respect to that plea agreement if you understood that the range may have been lower if you were in a lower criminal history category?
>
> A. I would have accepted the plea if I was in the lower category.
>
> Q. Why?
>
> A. I believe that that was a timeframe that I was willing to accept. It would allow me to at least be home to see my kids graduate from high school, my younger kids, and that was one of the reasons.
>
> Q. And why did you reject the plea agreement that was offered to you?
>
> A. I wanted to explore my other options, and, you know, based upon—you know, the advice that [my counsel] was giving me concerning maybe beating the other two charges.

App. 73. In the District Court's view, these comments amounted to Baker saying "he was not willing to accept a

22

[sentencing] timeframe of fifteen-to-seventeen years" under any circumstance. *Baker*, 2023 WL 2889483, at *16.

But Baker did not make any hard-and-fast statement that he would not have accepted a 15-17 year plea offer. He said instead that he would have accepted a plea offer with a lower sentence exposure because, in his mistaken view, that would have reflected an accurate criminal history category. Extrapolating from this comment to draw the conclusion that Baker would not have accepted the plea offer in any case, even if he knew he was facing a consecutive 57-year mandatory minimum, stretches his words too far. To the extent Baker's comments weigh against the likelihood he would have accepted the plea deal—inasmuch as they suggest he wanted a better deal—they are, at most, slightly probative. But they do not outweigh the prejudice caused by his counsel's large miscalculation of his possible sentence and his great sentence-exposure disparity.

The Government urges us to consider other evidence not expressly relied on by the District Court that, in its view, supports the Court's decision not to credit Baker's statement that he would have taken the plea offer but for his counsel's error. But none of its asserted grounds is persuasive.

*First*, the Government asserts that Baker's separate ineffective-assistance claim, based on his belief there was a separate plea offer for criminal possession of stolen property, demonstrates he is not credible because the District Court determined there was no such offer. Yet while Baker's counsel and the Assistant U.S. Attorney on the case testified no formal offer was made, Baker's counsel also testified that she had approached the Government with a proposed resolution

23

regarding possession of stolen property but that any proposal along those lines "was rejected." App. 106. In any case, this separate ineffective-assistance claim does not significantly undermine Baker's credibility in stating he would have accepted the plea offer the Government *did* formally make.

*Second*, the Government argues that Baker's testimony regarding his second ineffective-assistance claim—that his counsel misadvised him on his criminal history category—contained contradictions. Specifically, Baker testified at one point that his counsel told him he faced 15-17 years, which was consistent with a criminal history category of III, but at other points said his counsel told him a category of IV applied (on which basis he mistakenly believed that, under a lower category of III, he would face 13-15 years). The Government contends these inconsistencies show that Baker was willing to alter his testimony to suit his strategic purposes. But there was considerable confusion throughout the proceedings about what criminal history category applied. *See, e.g.*, App. 144–45 (describing a letter from plea counsel stating a category of III or potentially higher); PSR ¶ 92 (indicating a category of IV); App. 180–81 (portion of sentencing transcript where category was corrected from IV, as reflected in the presentence report, to III). More to the point, even if these inconsistencies are attributable to Baker (rather than merely being the result of more widespread confusion), they are not very probative of his credibility in stating he would have taken the plea offer but for his counsel's error, especially when balanced against his large sentence-exposure disparity.

*Third*, the Government contends Baker's testimony that his counsel told him he faced 31-51 years on all six counts is contradicted by his counsel's handwritten notes from their plea

discussion, which suggest she told him a range of 36-56 years. But his counsel also could not account for the range she provided in her handwritten notes, ultimately stating she "couldn't even guess" what the figures meant. App. 113. And Baker acknowledged it was possible she had actually advised him it was 36-56 years.

*Finally*, the Government claims that Baker's testimony that he would have accepted the plea agreement had he known he faced a 57-year mandatory minimum on the Section 924(c) counts is counterbalanced by evidence that he was determined to go to trial. Specifically, it points to plea counsel's testimony that Baker "had a state court case where he got a lot of time and the conviction got reversed, [which] he kept bringing . . . up. That—I think that he thought if he went to trial and lost that there would be significant issues for appeal." App. 119. By this, his counsel was apparently referring to an earlier conviction related to a robbery in New Jersey. There, Baker was sentenced to 50 years in New Jersey state prison. He appealed, and the case was remanded for an evidentiary hearing regarding ineffective assistance of counsel. Baker later accepted a negotiated sentence of 20 years' custody with an 8-year parole ineligibility. On the sole basis of *his counsel's* testimony above, the Government speculates that this "prior experience may have made it more likely that he would reject a plea offer and take his chances at trial and on appeal." Response Br. at 23. This speculation, based on Baker's counsel's off-hand conjecture, is insufficient to undermine his credibility.

Similarly, the Government argues Baker was committed to a trial based on his testimony that he believed he had a stronger defense to two of the three bank robberies due to a

25

relative lack of physical evidence. But this overlooks that, in the relied-on part of Baker's testimony, he was speaking to what his counsel told him regarding the strength of the Government's case. More importantly, nowhere did Baker state he was committed to putting the Government's case to the test at trial.

For these reasons, we credit Baker's testimony that, had he known he actually faced a 57-year mandatory minimum on the Section 924(c) counts rather than 21 years, he would have taken the plea offer.

### iii. Baker's Insistence on Innocence

We also find error in the weight the District Court gave to Baker's insistence on his own innocence in his criminal proceedings after he rejected the plea offer. Noting that Baker "maintained his innocence" throughout the criminal proceedings, including at sentencing, the Court determined that his "protestations of innocence," while not dispositive, weighed against the likelihood he would have accepted the plea offer. *Baker*, 2023 WL 2889483, at *15.

As explained below, while maintaining innocence may in some circumstances be relevant to determining the likelihood a defendant would have accepted a plea agreement but for an error by counsel, we do not find it strongly probative here.

Various courts have weighed a defendant's insistence on his innocence during criminal proceedings against the likelihood he would have accepted a plea agreement but for counsel's error, reasoning that it makes it less probable a

defendant would have been willing to admit guilt in accepting a plea offer. *See, e.g.*, *Sanders v. United States*, 341 F.3d 720, 723 (8th Cir. 2003) ("A defendant who maintains his innocence at all the stages of his criminal prosecution and shows no indication that he would be willing to admit his guilt undermines his later § 2255 claim that he would have pleaded guilty if only he had received better advice from his lawyer."); *see also Cullen v. United States*, 194 F.3d 401, 407–08 (2d Cir. 1999); *Humphress v. United States*, 398 F.3d 855, 859 (6th Cir. 2005); *United States v. Stevens*, 149 F.3d 747, 748 (8th Cir. 1998); *Jones v. Wood*, 114 F.3d 1002, 1012 (9th Cir. 1997); *Osley v. United States*, 751 F.3d 1214, 1224–25 (11th Cir. 2014). At the same time, courts have typically noted that insistence on innocence does not by itself determine whether a defendant can show a reasonable probability he would have accepted a plea but for counsel's error. *See, e.g.*, *Cullen*, 194 F.3d at 407; *Osley*, 751 F.3d at 1224. We have not addressed the issue precedentially or at length,[14] and thus we do so today.

---

[14] *See United States v. Tarnai*, 782 F. App'x 128, 129–31 (3d Cir. 2019) (concluding there was no reasonable probability the government would have kept a plea offer open when all evidence pointed to the defendant being "unwilling to admit guilt" (internal quotation marks omitted)); *Cordero v. Warren*, 673 F. App'x 254, 257 (3d Cir. 2016) (stating that an assertion of innocence, while relevant, is "not necessarily conclusive proof that a defendant would not have accepted a plea"); *United States v. Seeley*, 574 F. App'x 75, 80 (3d Cir. 2014) (weighing a defendant's "steadfast insistence" on innocence against the likelihood she would have accepted a plea offer); *Wheeler v. Rozum*, 410 F. App'x 453, 458 (3d Cir. 2010) (concluding the state court's application of *Strickland* was not

We agree that an insistence on innocence does not by itself resolve whether a defendant would have taken a plea offer but for his counsel's error. *See, e.g.*, *Cullen,* 194 F.3d at 407 (noting the factor is not dispositive). We also note some additional considerations that may counsel for limiting the weight of such evidence as a general matter.

First and foremost, defendants have a Fifth Amendment right to avoid self-incrimination, U.S. Const. amend. V, and "factoring in [a defendant's] assertion of his innocence would inappropriately punish him for exercising his Fifth Amendment right," *Morris*, 470 F.3d at 603; *see also Griffin*, 330 F.3d at 738 ("[A] defendant must be entitled to maintain his innocence throughout trial under the Fifth Amendment."). Weighing insistence on innocence too greatly in our reasonable-probability inquiry risks unduly deterring defendants from exercising this constitutional right.

Additionally, defendants may be advised by their counsel to maintain their innocence in their criminal proceedings after rejecting a plea. Such remarks, made on the advice of counsel, do not necessarily bear on defendants' own calculus during plea deliberations—the touchstone of the reasonable-probability inquiry.

Further, defendants can plead guilty under a plea agreement for reasons separate from their factual innocence or guilt. *See Brady v. United States*, 397 U.S. 742, 749–50 (1970); *North Carolina v. Alford*, 400 U.S. 25, 37 (1970)

_____

unreasonable where it relied in part on "protestations of innocence to conclude that [the defendant] was not prejudiced by counsel's failure to convey the plea offer to him").

28

("Whether [the defendant] realized or disbelieved his guilt, he insisted on his plea because in his view he had absolutely nothing to gain by a trial and much to gain by pleading."); *see also* John H. Blume & Rebecca K. Helm, *The Unexonerated: Factually Innocent Defendants Who Plead Guilty*, 100 Cornell L. Rev. 157 (2014); Jed S. Rakoff, *Why Innocent People Plead Guilty*, N.Y. Rev. Books, November 20, 2014. Maintaining innocence, therefore, is not wholly at odds with a defendant's claim that he would have been willing to plead guilty pursuant to an agreement but for his counsel's error.

It may also be necessary to adjust the probative weight of a defendant's insistence on innocence based on when it occurs in the criminal proceedings. While protesting innocence during plea negotiations may be probative of whether a defendant would have taken a plea offer but for his counsel's error, inasmuch as those comments reflect on the defendant's state of mind at the relevant time, insistence on innocence will likely have less weight after a plea has been rejected. For instance, if a defendant maintains his innocence during plea negotiations in a manner that suggests steadfast unwillingness to accept a plea or reflects a compelling desire to test the Government's case at trial, that may indicate he likely would not have accepted a plea but for any error by counsel. *See, e.g.*, *Osley*, 751 F.3d at 1224–25 (defendant repeatedly maintained innocence "both before and after trial"). *But see Griffin*, 330 F.3d at 738 ("Defendants must claim innocence right up to the point of accepting a guilty plea, or they would lose their ability to make any deal with the government."). But insistence on innocence in proceedings *after* the denial of a plea agreement is less likely to be probative of the defendant's state of mind and calculus during plea negotiations.

Additionally, where there is a significant disparity in the comparative sentence exposures between accepting a plea and going to trial, that objective figure may be even more probative of whether the defendant would have taken a plea agreement but for counsel's error than any implications that can be drawn from his assertions of innocence. *See Cullen*, 194 F.3d at 407; *Knight*, 981 F.3d at 1103.

Applying these principles here, Baker's insistence on innocence in his criminal proceedings after rejecting the plea offer is, at best, weakly probative of the likelihood he would have accepted a plea agreement but for his counsel's error. He testified that he maintained his innocence after rejecting the plea based on the advice of his counsel. He also admitted his guilt to his counsel before trial, as she corroborated. While his repeated remarks on his innocence at sentencing, noted by the District Court, might suggest a general unwillingness to admit his guilt, especially given that he was not required to make such remarks at sentencing, that inference is rebutted in this case by Baker's testimony that he maintained his innocence on the advice of his counsel and that he conceded his guilt to her before trial. Thus, Baker did not maintain a "steadfast and unmoving claim" of innocence, *cf. Jones*, 114 F.3d at 1012, or "maintain[] his innocence at all the stages of his criminal prosecution and show[] no indication that he would be willing to admit his guilt," *cf. Sanders*, 341 F.3d at 723.

Even if we draw a negative inference from Baker's insistence on innocence after he rejected the plea, its effect on prejudice is significantly outweighed by the substantial disparity in his potential sentence exposure between accepting the plea and going to trial, the magnitude of which Baker did not understand due to his counsel's erroneous miscalculation

30

of his possible sentence on the Section 924(c) charges. *See Cullen*, 194 F.3d at 407 (concluding that, while a defendant's insistence on innocence was a relevant factor in the reasonable-probability inquiry, he "might well have abandoned his claim of innocence" "if he had been properly informed of the significant difference between the likely sentencing ranges after trial and under the offered plea bargain"); *see also Kearn*, 90 F.4th at 1312 (concluding that a disparity provided objective evidence of the likelihood a defendant would have taken a plea despite statements supporting the conclusion that he would have refused to plead guilty).

## C. Conclusion

Looking at the available evidence, we conclude that Baker has demonstrated a reasonable likelihood he would have taken the plea offer but for his counsel's error in calculating his sentence exposure on the Section 924(c) counts. Contrary to the District Court, we credit his testimony that he would have done so. The significant disparity in his comparative sentence exposure between accepting the plea and proceeding to trial, the scope of which he did not know due to his counsel's miscalculation, weighs heavily in favor of finding prejudice. And Baker's insistence on his innocence after he rejected the plea weighs, at most, weakly against the likelihood he would have accepted it but for his counsel's error.[15] All of this creates

---

[15] As noted above, Baker's counsel only met with him to discuss the plea four days *after* its initial expiration date, even though he had only a month to consider it (February 17 to March 17, 2010). This limited time to consider the plea, along with the lack of any evidence regarding whether or how long

a probability Baker would have accepted the plea "sufficient to undermine [our] confidence in the outcome." *Strickland*, 466 U.S. at 694. He has thus demonstrated prejudice. *See id.*; *Lafler*, 566 U.S. at 174. Because his counsel's substantial miscalculation of his relative sentence exposure was objectively unreasonable, *see supra* Section II. A., his counsel was constitutionally ineffective.

Accordingly, we reverse the District Court's denial of Baker's ineffective-assistance claim brought pursuant to 28 U.S.C. § 2255 and remand to the District Court with an instruction to order the Government to reoffer the original plea agreement to Baker. *See Lafler*, 566 U.S. at 174; *Knight*, 981 F.3d at 1107–10. Should Baker accept the offer, the Court may then exercise its discretion in determining the correct remedy. *See Lafler*, 566 U.S. at 174–75; *Knight*, 981 F.3d at 1107–08; *see also* Tr. of Oral Arg. at 11, 23 (both parties agreeing that this is the correct remedy).

---

the offer was extended, further demonstrates the irregularity in Baker's plea deliberations.